MASONS UNION LIFE INSURANCE ASSOCIATION *v.* BROCKMAN.

[No. 3,196.    Filed January 31, 1901.]

INSURANCE.—*Exclusion of Evidence.—Conditions.*—In an action on an insurance policy that had been canceled by the company, where the questions in issue were whether the use of intoxicating liquors was a pernicious habit that obviously tended to shorten life, and

whether, if so, the insured drank intoxicating liquors to excess and thereby violated the terms of his policy, it was error to exclude the testimony of a competent witness that the insured was treated by a physician for the "drink habit" eighteen months after the policy was issued. *pp. 186-189.*

EVIDENCE. — *Competency.* — *Weight.* — The fact that a witness who stated that he testified from his own knowledge that the insured was treated for the drink habit also stated that he was not a physician and did not possess medical knowledge could only affect the weight of such testimony as to what the insured was treated for, and did not make it incompetent. *p. 188.*

SAME.—*Privileged Communications.—Third Person.*—Conversations between a physician and his patient in the presence of a third person are not privileged communications between physician and patient under §505 Burns 1894, and such third person may testify to what was said if it is otherwise admissible. *pp. 188, 189.*

SAME.—*Admissions.—Physician's Statement.*—Statements made by a person's physician in his presence as to his condition and acquiesced in by him may be proved as admissions by him. *p. 189.*

From the Johnson Circuit Court. *Reversed.*

*Marshall Hacker,* for appellant.

*J. F. Cox,* for appellee.

WILEY, J.—This is the second appeal in this case. For the decision in the former appeal, see *Masons, etc., Assn.* v. *Brockman,* 20 Ind. App. 206. In the former appeal the judgment was reversed, and when the opinion was certified to the court below, appellee filed an amended complaint in two paragraphs. While the amended complaint is unchallenged by the argument of counsel, it is necessary to state its material averments for the purpose of showing what the triable issues were.

In the first paragraph it is averred that appellant on the 19th of March, 1892, issued a policy of insurance on the life of Henry Brockman in the sum of $1,000, for and in consideration of an initiation fee and premium, which were paid; that by the terms of the policy, monthly payments were to be made on or before the 20th of each month to appellant's agent at Columbus, Indiana; that in pursuance

to said provision of the policy, said Henry Brockman paid all said monthly instalments as they became due, up to June 20, 1894, and on said day and when said monthly instalment became due, he tendered the sum of $2 in legal tender money of the United States, which was the amount of said monthly premium then due, but that appellant then and there declared it would accept no more dues or instalments from said Brockman. It is further averred that said Brockman was at all times ready, willing, and able to pay his said dues and instalments as appellant well knew, and that he performed all the duties on his part to be performed. It is also alleged that said Brockman died April 6, 1895, and that when said policy was issued and until his death appellee was his wife; that on April 18, 1895, appellee furnished proof of his death to appellant and performed all the conditions of said policy on her part to be performed. A copy of the policy, etc., is filed as an exhibit.

The second paragraph is essentially like the first, except that it specifies the agents of appellant to whom payments of dues were made from time to time, and contains the additional averment that when the last tender of payment was made and refused appellant knew that said Henry Brockman was in failing health and could only live a short time, and that in order to swindle, cheat, and defraud said insured out of all he had paid, and to avoid the payment of the amount of said policy at his death, directed and instructed its said agents not to accept any more dues or instalments from him, and to inform him that any offer to make such payments would be useless, as the same would not be accepted.

Appellee is named as beneficiary in the policy. Appellant answered in one paragraph, the substance of which is that after the policy in suit was issued, the insured became addicted to drinking intoxicating liquor to excess; that such habit was a violation of the conditions of his application, which was made a part of the policy; that in said ap-

plication he warranted that he was a total abstainer from the use of intoxicating liquors; that he did not then and would not in the future practice any pernicious habit that obviously tended to shorten life, and that for several months prior to his death he drank intoxicating liquors to excess, which such use of intoxicating liquors was a pernicious habit that obviously tended to shorten life, and that he thereby forfeited said policy. To this affirmative paragraph of answer—and this was the only answer filed by appellant —appellee replied by denial. Upon appellant's motion, it was given the open and close. Trial by jury; verdict and judgment for appellee. Appellant's motion for a new trial was overruled, and the overruling of this motion is the only question discussed under the assignment of errors. It is plain from the averments of the answer that appellant based its defense solely upon the conduct of the insured, which conduct, it is claimed, forfeited his contract of insurance.

The argument of counsel for appellant is confined to alleged errors of the trial court in admitting and in refusing to admit certain evidence, and in giving certain instructions on its own motion, and in modifying and giving as modified certain instructions tendered by appellant. Before entering upon a discussion of the questions relating to the admission of the evidence, it is important to remark that, on behalf of the appellee, evidence was introduced tending to show that the conduct, actions, and demeanor of the said insured at and subsequent to the time appellant canceled the policy, which conduct, actions, and demeanor strongly resembled those of a man under the influence of intoxicating liquor, were the result of disease growing out of la grippe. On the part of appellant it was insisted, and it introduced evidence tending to establish the fact, that such conduct, etc., was the result of intoxication. It is also shown by the evidence, and the fact is undisputed, that, prior to the issuing of the policy sued on, the insured was an inebriate and had taken treatment therefor. In his application for a

policy of insurance the insured was asked this question: "To what extent do you use intoxicating liquors ?" And his answer was: "None." He also said in answer to a question that he had formerly used intoxicating liquors to excess and to the impairment of his health. In his application, the insured declared and warranted, "that he is not now afflicted with any disease or disorder so far as he knows, and that he does not now, and will not, practice any pernicious habit that obviously tends to shorten life," etc.

In its answer, appellant averred that after the execution of the policy, and for several months prior to his death, the insured frequently drank intoxicating liquors to excess, which said use of intoxicating liquors was a pernicious habit that obviously tended to shorten life, and that by such conduct he forfeited his policy. It was upon this theory that appellant refused to accept the payment of monthly dues and upon which it canceled the policy. The promise of the insured that he would not practice any pernicious habit that obviously tended to shorten life was by the express language used made a warranty. By the terms of the policy, the application and the answers to questions therein are made a part of the contract of insurance. Appellant had a right to show by legitimate evidence, if it could, that after the issuing of the policy the insured drank intoxicating liquors to excess; that such use of intoxicating liquors was a pernicious habit, and that such pernicious habit obviously tended to shorten life. If these conditions existed, they would constitute a breach of the insurance contract on the part of the insured, for which appellant would be justified in canceling the policy. The policy was in fact canceled June 20, 1894.

One J. M. Taylor was called as a witness for appellant. He testified that during the summer of 1893 he was in Columbus, Indiana, where the insured lived; that while there he made his headquarters at the office of one Dr. Hudson; that for two weeks continuously he was in Dr.

Hudson's office every day, and during all that time the insured came to said office from once to twice each day for treatment. He was then asked the question: "State to the jury, if you know, what Henry Brockman's business was at Dr. Hudson's office ?" Appellee objected to the question, which objection was overruled, and witness answered: "Yes, sir; I did." Then followed the question: "State what it was ?" To this question appellee objected on the ground that Brockman was there in confidential relations with his physician. The objection was overruled and appellee asked and was granted permission to ask the witness some "preliminary" questions. Witness was then asked if he knew what was done there, or what the treatment was for, from his own knowledge or from what he heard said on such occasions. To this inquiry the witness answered that it was what he saw himself; that he saw the medicine in the hypodermic syringe and that he knew what it was for. He then testified in answer to a proper question that Brockman came there to take treatment for the "drink habit". Taylor said he saw him there twice a day and saw the physician treat him in the manner described. On cross-examination he was asked how he knew Brockman was taking treatment for the "drink habit", to which he replied: "Mr Brockman and the doctor both told me so." On appellee's motion, the court struck out all the evidence of the witness Taylor as to Brockman's taking treatment of Dr. Hudson for the drink habit. This was about eighteen months subsequent to the issuing of the policy.

Appellant argues that the evidence stricken out was competent and should have gone to the jury upon two grounds: (1) That witness had answered that he testified from his own knowledge of the facts, and (2) that he had a right to testify from the conversations between Brockman and his physician. Appellee urges that as the witness testified that he was not a physician and did not possess medical skill, he could not testify of his own knowledge, and that he

could not testify from what he heard Brockman and the doctor say, because that would be hearsay and that what he heard between them was privileged, on account of the confidential relations they sustained to each other. The witness having first said that he knew of his own knowledge what Brockman was being treated for, the evidence was competent, and it was for the jury to determine its weight. As to what the witness heard the insured and the doctor say, we are clear that such conversations in the presence of a third person were not privileged, and were not confidential communications between physician and patient, as covered by §505 Burns 1894, §497 Horner 1897. This exact question has been decided in this State. *Springer* v. *Byram,* 137 Ind. 15, 23 L. R. A. 244, 45 Am. St. 159. In that case, the appellant was hurt in an elevator. Immediately after the injury, he was placed in an ambulance where he was attended by a physician. In the ambulance there were also two other persons. While in the ambulance, the appellant had a conversation with the physician, and in such conversation detailed to him the manner .in which his injuries were received. This conversation was in the presence and hearing of the two persons in the ambulance. Upon the trial of the case, appellee offered to prove by two persons in the ambulance what the conversation was between appellant and his physician, and the offered evidence was rejected on the ground that the conversation was privileged. This ruling was held to be error. In an able opinion by Dailey, J., after reviewing the authorities, it was said: "It is settled law that if parties sustaining confidential relations to each other hold their conversation in the presence and hearing of third persons, whether they be necessarily present as officers or indifferent bystanders, such third persons are not prohibited from testifying to what they heard." Citing *Cotton* v. *State,* 87 Ala. 75, 6 South. 396; *House* v. *House,* 61 Mich. 69, 27 N. W. 858; *In re McCarthy,* 55 Hun 7, 8 N. Y. Supp. 578; *Commonwealth*

v. *Griffin,* 110 Mass. 181; *Hoy* v. *Morris,* 13 Gray 519; *Oliver* v. *Pate,* 43 Ind. 132; Wharton Crim. Ev. (9th ed.), §398; 1 Lawson's Rights and Rem., §147.

Under the rule stated in *Springer* v. *Byram, supra,* which is so firmly supported by the authorities, there can be no doubt but what the evidence of Taylor which the court struck out on appellee's motion was competent.   The evidence went to a vital question in appellant's defense as disclosed by its answer.   If appellant was being treated for the drink habit, and the witness knew it, either from his own knowledge or from what he heard the insured and his physician say when they were in each other's presence, it was competent for him so to testify.   As to what weight the evidence would have had with the jury is not a question with the court, but we hold that the evidence was competent and that it was error to strike it out.   It is the rule that if statements are made in the presence and hearing of a person affecting his rights, and under such circumstances as call for a reply, what he said, or if he failed to say anything, may be proved as in the nature of an admission.   *Springer* v. *Byram, supra; Pierce* v. *Goldsberry,* 35 Ind. 317; *Puett* v. *Beard,* 86 Ind. 104; *Surber* v. *State,* 99 Ind. 71; *Broyles* v. *State,* 47 Ind. 251; *Conway* v. *State,* 118 Ind. 482. These authorities settle the question under discussion beyond cavil or controversy.   The evidence of Taylor, which the court struck out on appellee's motion, was of vital importance to the issue in controversy.   The evidence was in direct line with appellant's defense as set up in its answer.

Appellant's counsel have ably discussed other questions arising under its motion for a new trial, but we may properly leave them undecided, as they are not likely to arise in a subsequent trial.   The judgment is reversed, and the court below is directed to sustain appellant's motion for a new trial.