## NORTH AMERICAN UNION v. OLESKE.

[No. 9,299. Filed May 16, 1917.]

1. INSURANCE.—*Life Insurance.—Policy.—Construction.—Suicide.* —The provision in a life insurance policy respecting the death of the insured by his own hand or act means death by suicide. p. 438.

2. INSURANCE.—*Life Insurance.—Action on Policy.—Instruction.* —Where a life insurance policy limited liability in case of suicide to the amount of premiums paid, less any amount paid to the insured by the company, a requested instruction that, if the insured had committed suicide, plaintiff could not recover, was properly refused, since there might be a recovery in some amount even though insured committed suicide. p. 438.

3. INSURANCE.—*Life Policy.—Suicide Clause.—Enforcement.*— Provisions of life insurance policies excepting death by suicide from the risk are sustained by the courts, and such provisions, even though excluding liability for self-destruction whether committed by the insured while sane or insane, are generally enforced. p. 438.

4. APPEAL. — *Review. — Refusal of Instructions. — Harmless Error.*—In an action to recover benefits under a life insurance policy, error, if any, in the refusal of the court to give a requested instruction that the presumption of law against suicide may be overcome not only by verbal testimony, but by reasonable deductions from the facts established, and on such question the jury should be governed by what was the reasonable probability, and that the fact of suicide need not be shown beyond a reasonable doubt, but by a mere preponderance of the evidence, was cured by the giving of other instructions covering substantially the elements contained in the instruction refused. p. 439.

5. INSURANCE.—*Life Insurance.—Policy.—Suicide.—Burden of Proof.*—The presumption is against suicide, and on that issue the burden of proof is on the party asserting it. p. 440.

6. APPEAL.—*Record.*—*Sufficiency.*—*Grounds of New Trial.*— *Scope of Review.*—Grounds for a new trial supported by affidavits and opposed by counter affidavits, which are copied into the transcript, but. are not made part of the record by bill of exceptions or order of court, will not be considered on appeal. p. 440.

7. NEW TRIAL.—*Grounds.*—*Newly-Discovered Evidence.*—*Cumulative Evidence.*—A new trial will not be granted on the ground of newly-discovered evidence which is merely cumulative.    p. 440.

8. APPEAL.—*Record.*—*Sufficiency.*—*Scope of'Review.*—Where the general bill of exceptions discloses, and the order-book entry of the filing of the bill, the certificate of the reporter and the judge's certificate show that all of the evidence was not included, the appellate court cannot say that alleged newly-discovered evidence assigned as a ground for a new trial is not merely cumulative, or that it is of such a character as would probably change the result if a new trial were granted.    p. 440.

9. WITNESSES.—*Privilege.*—*Confidential Communication.*—*Physicians.*—*Statute.*—Under §520 Burns 1914, §497 R. S. 1881, providing that physicians shall not be competent witnesses as to matters communicated to them as such by patients in the course of their professional business, or advice given in such cases, a physician is incompetent to testify as to statements made to him by the wife of the patient, who was unconscious, as to the cause and nature of the husband's ailment, such statements having been made to assist the doctor in giving proper treatment.    p. 441.

10. APPEAL. — *Record.* — *Sufficiency.* — *Questions Presented.* — Where the record does not disclose that in a former trial of the case a physician was allowed, without objection, to testify to privileged communications, which were excluded on the trial in question, objection to the exclusion of such evidence on the ground that the physician had been permitted to so testify raises no question on appeal.    p. 444.

11. EXCEPTIONS, BILL OF.—*Time for Filing.*—Where final judgment was rendered December 6, 1914, and on that date ninety days were given to file the bill of exceptions, but the bill was not signed by the judge and filed until June 11, 1915, the evidence was not in the record, and no question requiring consideration of the evidence is presented.    p. 444.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action by Augusta Oleske against the North American Union. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Clarence V. Donovan, Worth W. Pepple* and *John M. Stinson,* for appellant.

*Grant Crumpacker, Cornelius R. Collins* and *Jeremiah B. Collins,* for appellee.

CALDWELL, J.—Appellant is a fraternal benefit association, organized under the laws of Illinois, and licensed to do business in Indiana. On February 3, 1910, appellant issued a beneficiary certificate ŏn the life of Valentine Turczynski, whereby his life was insured in the sum of $2,000. His wife, Augusta Turczynski, now by a subsequent marriage Augusta Oleske, the appellee, was named as beneficiary. The insured died November 21, 1910. Appellee brought this action to recover on the policy. Appellant filed an answer in three paragraphs: first, a general denial; second, tender of $85.40; and third, that the insured committed suicide. A reply being filed, a trial resulted in a verdict for $2,414, on which judgment was rendered.

The questions properly presented on this appeal arise under the motion for a new trial. The second and third paragraphs of answer are based on the following provision of the certificate: "Suicide:—If the said insured shall die by his own hand or act, either sane.or insane, such death shall forfeit any and all rights and claims to the amount stated in this policy, and the beneficiary or beneficiaries shall receive and be paid in lieu thereof a sum equal to the total amount actually paid by said insured to the mortuary and reserve funds of the said North American Union, less any amount which has been paid to the insured under this policy."

The provision respecting the death of the insured by his own hand or act means death by suicide. *Bigelow*

v. *Berkshire Life Ins. Co.* (1876), 93 U. S. 284,
1.    123 L. Ed. 818; *Supreme Lodge* v. *Gelbke*
(1902), 198 Ill. 365, 64 N. E. 1058. That the
parties to the contract so understood it is indicated by
the word "suicide," placed as a heading to the quoted
portion of the certificate.

At the trial the principal question in controversy was
whether the insured's death resulted from his administering to himself carbolic acid with suicidal intent.
All other matter in controversy was related to such principal question.

Proceeding to consider the alleged errors, complaint
is made of the refusal of the second, fifth, sixth and
seventh instructions tendered by appellant. The
2.    second instruction was to the effect that if the
jury believed from the evidence that the insured
committed suicide, there could be no recovery under the
certificate. Provisions of life insurance policies,
3.    by which death by suicide is excepted from the
risk, are sustained and enforced by the courts,
and as a rule even though such provisions contain the
"sane or insane" clause. *Kunse* v. *Knights, etc.* (1909),
45 Ind. App. 30, 90 N. E. 89; *Union Central Life Ins.
Co.* v. *Hollowell* (1895), 14 Ind. App. 611, 43 N. E. 277;
*Bigelow* v. *Berkshire Life Ins. Co., supra; Cady* v. *Fidelity, etc., Co.* (1907), 17 L. R. A. (N. S.) 261, note;
14 R. C. L. 1232. Here, however, it appears
2.    from the provisions of the policy, as above
quoted, that even though the insured committed
suicide, there might be a recovery in some amount.
That fact and the issue of tender relating thereto were
ignored by the second instruction. The court was
therefore justified in refusing it. It may be said, also,
that by the court's ninth instruction, the subject-matter of the refused instruction, including appellee's

rights in case the jury found that the insured committed suicide, was fully and accurately presented.

The refused fifth instruction called the jury's attention to the suicide provision of the certificate, and informed the jury that it was the court's duty to construe such provision. Such instruction was covered in detail by the court's second, third and fifth instructions.

The refused sixth instruction was as follows: "You are instructed that the presumption of law against suicide may be overturned not only by verbal testimony but by reasonable deductions from the facts established; that on this question, you are to be governed by what is the reasonable probability; that the fact of suicide need not be shown beyond a reasonable doubt, but by a mere preponderance of the evidence." The sixth refused instruction is copied from the opinion in *Modern Woodmen, etc.* v. *Kincheloe* (1910), 175 Ind. 563, 94 N. E. 228, Ann. Cas. 1913 C 259, wherein it is held that the giving of such instruction cured the error, if any, in refusing an instruction of like nature. The only point made by appellant in support of its contention that the court erred in refusing the sixth instruction, is that the court failed to advise the jury "that they should in arriving at their verdict take into consideration all of the circumstances surrounding the alleged commission of the suicidal act" as disclosed by the evidence. The court by the eleventh instruction, of which appellant does not complain, performed such duty specifically, and with great particularity. It may be said also that the court, by the thirteenth instruction, informed the jury that the reasonable-doubt rule did not apply. Other elements of the sixth refused instruction, together with the seventh refused instruction, are covered substantially by the court's twelfth instruction, wherein the jury were informed respecting the degree of proof sufficient to establish a proposition.

Complaint is made of the tenth instruction given by the court. This instruction was to the effect that there is a presumption against suicide, and that on that issue the burden is on the party asserting it. There was no error in giving it.

The existence of newly-discovered evidence is assigned as one of the grounds for a new trial. Such grounds are supported by certain affidavits and opposed by certain counter affidavits. Such affidavits and counter affidavits, while copied into the transcript, are not made a part of the record by bill of exceptions or order of court. It results that such affidavits and such grounds for a new trial are unavailing on appeal. *Creamery, etc., Co.* v. *Hotsenpiller* (1902), 159 Ind. 99, 64 N. E. 600; *Townsend* v. *State* (1892), 132 Ind. 315, 31 N. E. 797; *Wood* v. *Crane* (1881), 75 Ind. 207. Moreover, a new trial will not be granted on the ground of newly-discovered evidence which is merely cumulative. *City of Linton* v. *Smith* (1903), 31 Ind. App. 546, 68 N. E. 617; *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619.

The situation here is as follows: The general bill of exceptions discloses affirmatively that it does not contain all the evidence. The order-book entry of the filing of the bill recites that it contains but part of the evidence. A certificate of the official reporter, appended to the longhand manuscript of the evidence, recites that for want of time he had not transcribed all the evidence, and hence that the testimony of twenty-five witnesses and copies of certain exhibits, estimated as amounting to about 600 pages, had been omitted. The judge's certificate recites that that part of the evidence that had been transcribed is correct. Under such circumstances, it does not appear that such newly-discovered evidence is not merely cumulative, or that it is of such a character as would probably change

the result if a new trial were granted. Elliott, App. Proc. §857.

The insured on the morning of the day on which he died was suddenly stricken with severe illness, the nature of the ailment being in controversy. The insured was unconscious and remained in that condition until he died. Appellee, discovering insured's condition, sent for certain neighbor women and also called Doctor Keringen. At the trial appellant offered to prove by the doctor some statement made by appellee to him in the presence of such neighbors and relative to the insured's condition. The statement, if made at all, was made while the doctor, assisted by the neighbors and by appellee, was examining the insured with a view to treatment, the insured being at that time unconscious. The testimony was excluded as privileged. It is urged that in such ruling the court erred. Two reasons are assigned: First, that the evidence sought was not privileged; secondly, if privileged, it had lost its character as such, because at a former trial of the cause the physician testified without objection to the matters sought. On the question whether appellant is entitled to have reviewed the action of the court in excluding such evidence, where, as here, it affirmatively appears that the bill of exceptions does not contain all the evidence, see the following: *Cincinnati, etc., R. Co.* v. *McMullen* (1889), 117 Ind. 439, 20 N. E. 287, 10 Am. St. 67; *Hedrick* v. *D. M. Osborne & Co.* (1884), 99 Ind. 143; *Pedigo* v. *Grimes* (1888), 113 Ind. 148, 13 N. E. 700; *Estate of Wells* v. *Wells* (1880), 71 Ind. 509; *Sutherland* v. *Hankins* (1877), 56 Ind. 343.

The statute that governs is as follows: "The following persons shall not be competent witnesses:  *  *  *

4. Physicians as to matters communicated to them as such by patients in the course of their professional business, or advice given in such

cases." §520 Burns 1914, §497 R. S. .1881. Respecting the interpretation of this statute, the Supreme Court in *Cincinnati, etc., R. Co.* v. *Gross* (1917), 186 Ind. 471, 114 N. E. 962, says: "This enactment has consistently been construed by this court as covering a broader field than is indicated by the literal meaning of the words employed, and, so construed, it renders the physician incompetent to disclose information acquired by him while attending a patient in his professional capacity." The insured, being unconscious, was unable to give to the physician any account of the cause, origin or history of his ailment. It was necessary that such service be performed by another, if at all, and it would seem that the wife should be considered a proper person to give such information. Where the intervention of a third person is necessary in order that the patient may communicate with the physician with a view to intelligent treatment, neither the physician nor such third person may disclose, over objection, information so communicated. *Springer* v. *Byram* (1894), 137 Ind. 15, 22, 36 N. E. 361, 23 L. R. A. 244, 45 Am. St. 159; *State* v. *Loponio* (1913), 85 N. J. Law 357, 88 Atl. 1045, 49 L. R. A. (N. S.) 1017. To information obtained by a physician while treating his patient, " 'The privilege may attach, notwithstanding the presence of third persons in the sickroom, where the consultation is held.' " *Springer* v. *Byram, supra; Cahen* v. *Continental Life Ins. Co.* (1876), 41 N. Y. Super. Ct. 296.

It is held, however, that disinterested persons present when a patient communicates with his physician relative to the ailments of the former may testify to such communications. *Springer* v. *Byram, supra; Masons Union Life, etc., Assn.* v. *Brockman* (1900), 26 Ind. App. 182, 59 N. E. 401. "If the knowledge is acquired in the chamber of the patient, and in the discharge of professional duty, the physician can make no disclo-

sure. This is true, whether the knowledge is communicated by the words of the patient, or is gained by observation, or is the result of a professional examination. The law forbids the physician from disclosing what he learns in the sickroom no matter by what method he acquires his knowledge." *Heuston* v. *Simpson* (1888), 115 Ind. 62, 17 N. E. 261, 7 Am. St. 409. See, also, *Masonic, etc., Assn.* v. *Beck* (1881), 77 Ind. 203, 40 Am. Rep. 295. The privilege extends not only to communications from the patient to the physician, but to information derived by the physician from persons present at the interview. *Edington* v. *Mutual Life Ins. Co.* (1875), 5 Hun. 1, 67 N. Y. 185; Wharton, Evidence (3d ed.) §606 and note; Jones, Evidence (2d ed.) §759. The Edington case is cited and quoted from in *Hueston* v. *Simpson, supra.* It is held in *People* v. *Brower* (1889), 53 Hun. 217, 6 N. Y. Supp. 730, that where a husband went to a physician's office to call him to treat the former's wife, a statement made to the physician by the husband respecting the nature and origin of the wife's ailment was privileged. In *Denaro* v. *Prudential Ins. Co.* (1913), 154 App. Div. 840, 139 N. Y. Supp. 758, the following is said: "When a physician enters a house for the purpose of attending a patient, he is called upon to make inquiries, not alone of the sick person, but of those who are about him, and who are familiar with the facts, and communications necessary for the proper performance of the duties of the physician are not public because made in the presence of his immediate family or those who are present because of the illness of the person. Of course the persons who are present are not denied the right to testify; it is only the physician who is bound by the rule."

It is true that the weight which should otherwise be assigned to the New York decisions is detracted from

somewhat by the fact that the governing statute of that state is not identical with ours. Nevertheless, we regard the situation presented here as arousing the spirit of our statute, and as a consequence that the evidence sought by the testimony of the physician was privileged and properly excluded.

The record does not disclose that in a former trial of this cause the physician was permitted, without objection, to testify to the matter excluded here.

10. *Studabaker* v. *Faylor* (1912), 52 Ind. App. 171, 98 N. E. 318, and *Pittsburgh, etc., R. Co.* v. *O'Conner* (1908), 171 Ind. 686, 85 N. E. 969, are therefore not applicable.

It may be said in addition that an examination of the transcript discloses that the bill of exceptions containing a part of the evidence is not in the record.

11. The facts are as follows: Final judgment was rendered December 16, 1914, at which time an appeal was prayed and granted, and ninety days given within which to file a bill of exceptions containing the evidence. Such granted time was not extended. The bill was signed by the judge and filed June 11, 1915. There is nothing to indicate that it was presented to the judge at an earlier date. The evidence is therefore not in the record. It follows that no question involving the evidence is presented. We have nevertheless considered certain questions depending on the evidence, by reason of their importance. *Nat. Live Stock Ins. Co.* v. *Owens* (1916), 63 Ind. App. 70, 113 N. E. 1024.

We find no error in the record for which the judgment should be reversed. Judgment affirmed.

NOTE.—Reported in 116 N. E. 68. Insurance: burden of proof on the issue of suicide, 50 Am. St. 442; 25 Cyc 930. See under (1) 25 Cyc 740; (2) 25 Cyc 951; (9) 40 Cyc 2385.