GENERAL ACCIDENT, FIRE & LIFE ASSURANCE
CO., LTD. OF SCOTLAND *v.* TIBBS.

[No. 15,185. Filed June 2, 1936.]

*J. Allen Lampman, John A. Bloomington, Lee L. Osborn* and *Kenneth D. Osborn,* for appellant.

*Moore, Long & Johnson* and *Darrow, Rowley & Shields,* for appellee.

WIECKING, J.—On September 6, 1931, the appellee, plaintiff below, was injured in an automobile accident. Appellee was riding in a car driven by its owner, Robert Taylor, which collided with a truck driven by Robert Robinson, an employee of Midland Press. At the time of the collision Robert Robinson was using the truck without the knowledge or consent of the owner and was returning from a trip made on personal business. The appellee on September 10, 1931, filed an action for damages against said Robert Robinson and Midland Press as a result of the collision. The appellant was the insurance carrier for Midland Press and covered the truck involved against liability for personal injuries and property damage upon certain conditions. On October 15, 1931, the appellee, accompanied by her father, mother, sister, and Robert Taylor went to Chicago, to the office of the appellant and while there executed an instrument purporting to release her claim against Midland Press from damages for her injury. At that

time the appellant paid to appellee the sum of $442.50 in compromise of her claim, without admitting any liability. Some time later in March of 1933, the appellee brought this action for damages against the appellant for fraud practiced on her by appellant's agents in inducing her to sign a release of her claim against Midland Press.

The complaint was in one paragraph, to which the appellant filed an answer in general denial. The cause was tried by a jury resulting in a verdict for the appellee and against the appellant in the sum of $2,529.00. Judgment was rendered upon the verdict and this appeal is prosecuted from that judgment. The errors assigned here are (1) that the court erred in overruling the appellant's motion for judgment on the interrogatories, and (2) the court erred in overruling the appellant's motion for a new trial.

The grounds of the motion for new trial presented by appellant's brief are: (a) that the verdict of the jury is not sustained by sufficient evidence; (b) that the verdict of the jury is contrary to law; (c) that the damages assessed by the jury are excessive; (d) the court erred in refusing to instruct the jury to return a verdict for the defendant at the close of the plaintiff's evidence; (e) the court erred in refusing to instruct the jury to return a verdict for the defendant at the close of all the evidence; (f) the court erred in admitting certain exhibits in evidence; (g) the court erred in excluding certain evidence of the witness Bessie Miller, a nurse, on the ground that such evidence was privileged; (h) the court erred in refusing to give certain instructions tendered by the defendant; and (i) the court erred in giving certain instructions of its own motion.

The principal question raised by the appellant is as to the legal effect of the release signed by the appellee.

The jury by its answers to interrogatories specifically found that she was induced to sign the release by fraud practiced upon her by appellant's agents. However, for the appellee to recover in this action she must necessarily show not only that she was fraudulently induced to sign the statement but that in so doing she was damaged. Appellee's position is that in executing the release to Midland Press she thereby also released Robert Robinson and was prevented from recovering against him. She must therefore also show that she had a good cause of action against said Robinson. The jury by its answers to the interrogatories in this case specifically found that at the time of the collision the said Robinson was not performing any act or duty as an employee of Midland Press but was operating the truck in question for his own personal purposes and not as an employee of Midland Press. This narrows our inquiry on the release in question as to the legal effect of the release when there was no legal liability on the part of the one to whom it was executed and whether or not such release acted as a release of said Robinson.

The release executed by the appellee, omitting the verification and signature of witnesses, was as follows:

"Know All Men by These Presents, THAT I, Leota Tibbs, in consideration of the sum of FOUR HUNDRED FORTY-TWO AND 50/100 ($442.50) DOLLARS plus medical expense not to exceed $30.00 to me in hand paid by Midland Press, receipt whereof is hereby acknowledged, have released, acquitted and discharged and by these presents do release, acquit and forever discharge said Midland Press of and from any and all actions, causes of action, damages or demands of whatever name or nature in any manner arisen, arising or to grow out of any and all accidents or matters and especially an accident to myself claimed by the undersigned to have been sustained on or about the 6th day of September, 1931, substantially as follows: wherein I was injured when, on United States Highway number 12, five miles east of Michigan City, In-

diana, the automobile in which I was riding was in collision with automobile of Midland Press.

"To secure this settlement and the payment of said sum I hereby declare that I am twenty-one years of age, and that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of injuries, disabilities and damages sustained by myself and that no representations or statements about them, made by the surgeons or agents of said Midland Press have influenced me in making, or induced me to make this settlement.

"It is further acknowledged that there is no agreement or promise on the part of said Midland Press to do or omit to do any act or thing not herein mentioned, and that the above consideration is in full settlement of any and all damages to the undersigned arising from or out of any and all matters aforementioned.

"The said Midland Press in paying the said sum of money does so in compromise of the said claim or claims, action or actions, cause of action or causes of action, damages and demand or demands above released, not admitting any liability on account of the same.

"In Witness Whereof, I have hereunto set my hand and seal at Chicago, Illinois, this 15th day of October, A. D. 1931.

(Signed) "LEOTA TIBBS. (L. S.)"

The appellee relies upon the familiar rule of law that payment by and release of one of two or more joint tort feasors operates as a release of all and relies principally on the case of *Cleveland, etc., R. Co.* v. *Hilligoss* (1908), 171 Ind. 417, 86 N. E. 485. That case involved an action against the railroad company for injuries sustained by Hilligoss in consequence of a collision between a train of the railroad company and an interurban car belonging to Hilligoss's employer. Sometime later Hilligoss executed a release to his employer. The railroad company by answer pleaded that the collision was caused by joint and concurrent acts of negligence of the interurban company and the railroad com-

pany; that the negligence of the motorman on the interurban car was the proximate cause of the collision and then pleaded the release to which answer a demurrer was sustained by the trial court. The Supreme Court held that the demurrer should have been overruled, laying down the rule contended for by appellee in this case but basing it upon the following premise (p. 422):

> "It is an ancient and well-established rule, almost without exception in England and America, that for a single injury there can be but one recompense. *When more persons than one united in the commission of a wrong, each responsible for the acts of all,* and for the whole damage; also, where separate and independent acts of negligence by different persons concur in causing a single injury, each is fully responsible for the trespass. Courts will not undertake to apportion the damage in such cases among the joint wrongdoers. The injured party has, at his election, his remedy against all, or any number. 1 Cooley, Torts (3d ed.), §153. He may elect to look to one only, and, if he accepts from that one a benefit, or property, in satisfaction and release, he can go no further. He cannot have a second satisfaction. Having had a reparation from one who was responsible for all the damage, and released him, all others who were jointly, or jointly and severally, liable are also released. One satisfaction is a bar to further proceedings on the same action. *Fleming* v. *McDonald* (1875), 50 Ind. 278, 19 Am. Rep. 711; *Ashcroft* v. *Knoblock* (1896), 146 Ind. 169, 174." (Our italics.)

We have no quarrel with the holding of the court in the above case, but we do not believe that it controls in the present matter. In the present case the Midland Press could only have been liable on the theory of *respondeat superior*. No evidence of any kind or character in this case and no allegation of the original complaint in the action for damages was to the effect that Midland Press *united* with anyone in the commission of a wrong. The answer in the Hilligoss case clearly stated

an actionable wrong on the part of the party to whom the release was granted. In our opinion the better rule is stated in the case of *The Kentucky and Indiana Bridge Company* v. *Hall* (1890), 125 Ind. 220, 25 N. E. 219. In that case the appellee, an employee of the L. E. and St. L. R. R. Co., was injured in consequence of a collision between a train operated by his employer and a train of defendant. His employer took a release from the appellee which was subsequently pleaded by the appellant in bar of the action. The court in deciding that case said (p. 224) :

> "From the evidence before them the jury might well conclude that the L. E. & St. L. R. R. Co. was in no way responsible for the accident, and, if not, there was no joint liability to which the rule that the release of one joint wrongdoer has the effect to discharge all others."

So in the instant case the jury not only might well conclude from the evidence, but by its answers to the interrogatories specifically found, that the Midland Press was in no, way responsible for the accident and hence there was no joint liability to which the rule that the release of one joint wrongdoer discharged all others might apply. *The Kentucky and Indiana Bridge Company* v. *Hall, supra; Gulf Refining Co.* v. *Ferrell* (1933), 165 Miss. 296, 147 So. 476; *Sieber* v. *Amunson* (1891), (Wis.), 47 N. W. 1126.

The next contention of the appellant is that the court erred in excluding the evidence of the nurse, Bessie Miller, as to what she observed as to appellee's breath at the time appellee was brought into the hospital at Michigan City. The court excluded the nurse's testimony on the ground that it was privileged. That portion of our statute on privileged communication applicable here is the fourth clause of Section 2-1714, Burns' Annotated Statutes 1933 (§303, Baldwin's 1934), which is as follows:

"The following persons shall not be competent witnesses: . . .

"Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

Under the common law communications between a patient and a physician were not privileged. Statutes such as ours are in derogation of the common law and must be strictly construed. Our statute refers specifically to "physicians." The privilege does not extend to third persons who are present and overhear a conversation under our decisions unless such third person was necessary for the purpose of transmitting the information to the physician. *Springer by next friend* v. *Byram et al.* (1894), 137 Ind. 15, 36 N. E. 361; *North American Union* v. *Oleske* (1917), 64 Ind. App. 435, 116 N. E. 68. Our Supreme Court in the case of *William Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 90 N. E. 1014, defines the term physician as follows (p. 488) :

" 'The word "physician" is defined to mean a person who has received the degree of doctor of medicine from an incorporated institution; one lawfully engaged in the practice of medicine.' 30 Cyc. 1544.
"It is made unlawful for anyone to practice medicine in this State without first obtaining a license so to do; and practicing medicine without license is punishable as a misdemeanor. §§8400, 8410, Burns 1908, Acts 1897, p. 255, §§1, 9."

A nurse certainly does not come within this definition as adopted by our courts and any observation of her own could not be a privileged communication within the meaning of our statute. It is argued by appellee that public policy demands that nurses be included within the privileged class. This is a matter solely for the legislature and the statute could be extended to cover nurses only by it and not by judicial construction. The court erred in excluding the proferred testimony of the

nurse, Bessie Miller, as the appellant was entitled to have all of the facts bearing on contributory negligence of the appellee, if any, go to the jury.

The verdict of the jury was contrary to law and the court erred in excluding the evidence of the nurse, Bessie Miller.

The judgment of the LaPorte Circuit Court is reversed with instructions to grant the appellant's motion for a new trial.