543 N.E.2d 410 (1989)
In the matter of C.P., a Child Alleged to Be a Delinquent Child.
No. 52A04-8903-JV-78.
Court of Appeals of Indiana, Fourth District.
September 14, 1989.
J. Richard Sims, Cole, Haig & Sims, Peru, for appellant.
Linley E. Pearson, Atty. Gen. of Indiana, Indianapolis, Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.
CHEZEM, Presiding Judge.

Statement of the Case
The appellant, C.P., appeals the trial court's interlocutory order overruling her objection, based on the physician-patient privilege, to the admission of certain evidence.
We affirm.

Issue
Did the court err when it overruled C.P.'s objections to the admission at trial of medical records and the testimony of a social worker when one objection sought to invoke the physician-patient privilege and the other alleged hearsay?

Facts
On September 6, 1988, the State filed a petition alleging that C.P., a 16 year old, is a delinquent child by reason of incorrigibility pursuant to Ind. Code 31-6-4-1(a)(4). The complaining witness, L.K.P., is C.P.'s mother. L.K.P. executed a "consent to disclose confidential information" regarding disclosure of information to George Walker of the Miami County Probation Department *411 involving C.P. and her treatment at the Four-County Counseling Center. The counseling had been suggested by C.P.'s school, but occurred at Four-County.
On November 1, 1988, C.P. appeared in court with her parents where the court appointed Richard Sims as pauper counsel and guardian ad litem. On December 13, 1988, C.P. denied the incorrigibility charge. On January 5, the State filed an amended petition alleging delinquency.
At a January 10, hearing, C.P. denied the allegations of the amended petition. The State called Mark Brown, a social worker and therapist from a community mental health center, to testify. Mr. Brown had provided therapy, diagnosed and treated C.P. during 1987.
C.P. objected to Mr. Brown's testimony, asserting the physician-patient privilege. The court took the objections under advisement. Another State witness, George Walker, a probation officer, testified and introduced records that he had received from the mental health center pursuant to the consent L.K.P. had given. C.P. objected to the introduction of the records based on hearsay, the physician-patient privilege, and invalidity of the consent given by L.K.P. The court also took these objections under advisement.
On February 8, 1989, the court overruled C.P.'s objections. On February 15, C.P. filed a Petition for Certification of Appeal of Interlocutory Order and for Stay of Proceedings Pending Appeal, which was certified by the court on March 6. The Court of Appeals granted C.P.'s motion for leave to appeal.
Other facts will be added as needed.

Discussion
I.C. XX-X-XX-X addresses the physician-patient privilege:
The following persons shall not be competent witnesses:
.....
Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases, except as provided in I.C. 9-4-4.5-7 [repealed. See I.C. 9-11-4-6].
This section of the Code generally affects only a physician and the physician's patient. Third parties to such communication are usually not prohibited from testifying. General Accident, Fire & Life Assurance Company v. Tibbs (1936), 102 Ind. App. 262, 2 N.E.2d 229, 232; Green v. State (1971), 257 Ind. 244, 274 N.E.2d 267, 272. Even though there are cases which do protect a third party's communication, the cases are few and the circumstances are limited. For example, in North American Union v. Oleske (1917), 64 Ind. 435, 116 N.E. 68, 70, the patient was unconscious and therefore a third party was necessary to communicate to the physician information about the patient's illness so that the physician could administer the correct treatment. This third party communication was held to be privileged  it was necessary as the third party was a substitute for the patient. "The physician/client privilege applies only to those communications necessary to treatment or to diagnosis looking toward treatment." Collins v. Bair (1971), 256 Ind. 230, 268 N.E.2d 95; Corder v. State (1984), Ind., 467 N.E.2d 409, 415.
A situation analogous to the one at hand is a nurse in a working relationship with a physician where their care for a patient overlaps. General Accident, supra, holds that communication to a nurse is not privileged:
Under the common law, communications between a patient and a physician were not privileged. Statutes such as ours are in derogation of the common law and must be strictly construed. Our statutes refer specifically to "physicians." The privilege does not extend to third persons who are present and overhear a conversation under our decisions unless such third person was necessary for the purpose of transmitting the information to the physician.
A nurse certainly does not come within this definition as adopted by our courts, and any observation of her own could not be privileged communication within the meaning of our statute. It is argued by appellee that public policy demands that *412 nurses be included within the privileged class. This is a matter solely for the Legislature... .
Supra, 2 N.E.2d at 232, 233.
We recognize an analogy between a nurse/physician working relationship and a social worker/psychiatrist working relationship and apply the General Accident rule to C.P.'s case. Both nurses and social workers, while working under the supervision of a physician, gather patient information and indeed treat patients in their own right, but ultimately treatment must be approved by the physician. If communication between such adjunct personnel and patients is to be privileged, the legislature will have to specifically include such a clause in the privilege statute. We will not extend the physician-patient privilege to include adjunct personnel. But cf. Daymude v. State (1989), Ind. App., 540 N.E.2d 1263.
We note that in the case at hand, the physician never saw C.P. The physician's supervision of services given to C.P. consisted of a one hour per week consultation with Mr. Brown regarding all of Mr. Brown's clients. We question whether the services received by C.P. are medical treatment as contemplated by the privilege statute.
Because we find that Mr. Brown's testimony is not privileged, we need not reach the issue regarding whether L.K.P. may waive C.P.'s right to assert the physician-patient privileges to keep Mr. Brown from testifying against C.P.'s wishes.
C.P. next contends that her objection based on the physician-patient privilege and hearsay to the admission of her Four-County Counseling Center health records should be sustained. The Indiana Code has also addressed this issue (in pertinent part):
Chapter 1.6 Rights of Persons Being Treated for Mental Illness or Developmental Disabilities.

Section 1. This chapter applies to individuals receiving mental health services ... in or from:
.....
(3) a community mental health center.
.....
Section 8. (f) The record is not discoverable or admissible in any legal proceeding without the consent of the patient or client.
(g) For the purposes of this section, the parent of a minor or the guardian ... shall be entitled to exercise the patient's or client's rights on his behalf.
I.C. 16-14-1.6-1 and 16-14-1.6-8. We can find no Indiana case which interprets the pertinent portion of this code subsection; therefore, this is a case of first impression. We find that subsection (g) gives L.K.P. the authority to allow the admission of C.P.'s Four-County records into court. The words of the statute have clear and unambiguous meaning: The parent or guardian of a minor shall be entitled to exercise the minor's rights on the minor's behalf. L.K.P. is C.P.'s mother, and therefore she shall be allowed to exercise C.P.'s right provided in subsection (f)  allowing her records into court. This decision was L.K.P.'s prerogative, and we may not abrogate her statutory right to make such a decision.
Further, we consider the purpose of the Indiana Juvenile Code, I.C. 31-6-1-1:
Sec. 1. It is the policy of this state and the purpose of this article:
.....
(2) to provide a judicial procedure that insures fair hearings and recognizes and enforces the constitutional and other legal rights of children and their parents;
(3) to insure that children within the juvenile justice system are treated as persons in need of care, treatment, rehabilitation, or protection;
.....
(5) to strengthen family life by assisting parents to fulfill their parental obligations;
.....
It is apparent that the juvenile court is not an adversarial arena. Instead, the court must always balance the needs of the child, family, and community as it strives *413 for the ideal solution, a disposition in the child's best interest. Such a decision cannot be reached if the court does not have the necessary information before it. Incorrigibility may not always be determined solely from the overt acts of the child. It may be that the attitude or reasoning of the child is as indicative of the child's incorrigibility as the specific act of disobedience.
However, in other juvenile fact findings related to an act which would be a crime if committed by an adult, the disputed records would be less relevant. Nevertheless, in any juvenile disposition hearing these records would be relevant and necessary to the determination of a dispositional order. Therefore, it would seem to be a frustration of the purposes of the juvenile code to deny the admission of these records.
C.P. argues that the records from Four-County should not be admitted into evidence because the records are hearsay. However, this court held in Keramida v. Zachmanoglou (1984), Ind. App., 470 N.E.2d 769, that even though the report is hearsay, the Patterson rule will allow the records into evidence because the out-of-court asserter is present at trial to be examined and cross-examined. See Patterson v. State (1975), 263 Ind. 55, 324 N.E.2d 482. Here, Mark Brown, the person who created and prepared the medical report in question, was available for cross-examination.
C.P. next argues that the physician-patient privilege should bar the admission of the Four-County records into evidence. Since we earlier found that the physician-patient privilege did not attach to Mr. Brown's testimony, it follows that also the records of his evaluation do not fall under the physician-patient privilege.
The trial court correctly overruled C.P.'s objection to Mr. Brown's testimony and to the introduction into evidence of C.P.'s mental health records from Four-County Counseling Center. We therefore affirm the trial court's overruling of C.P.'s objection.
CONOVER, J., concurs.
HOFFMAN, J., dissents with separate opinion.
HOFFMAN, Judge, dissenting.
I respectfully dissent from the majority's conclusion that the physician-patient privilege did not bar the admission into evidence of Mr. Brown's testimony and the records of his evaluation. Mr. Brown, a social worker who gathered background information from the patient for submission to a supervising psychiatrist, acted as an agent of the psychiatrist. To permit the agent's testimony was a perversion of the statute creating the physician-patient privilege. See IND. CODE § 34-1-14-5 (1988 Ed.).
At common law, confidential communications made by a patient to a physician were not privileged. The physician-patient privilege emerged as a result of legislative enactment. The object of the statute was to place the communications made to physicians in the course of their professional employment on the same footing with communications made by clients to their attorneys in the course of their employment. Springer v. Byram (1894), 137 Ind. 15, 21, 36 N.E. 361, 363.
Accordingly, it is instructive to examine the scope of the attorney-client privilege when defining the parameters of the physician-patient privilege. The attorney-client privilege extends to the attorney's clerk, interpreter, assistant attorney or other agent while in the discharge of his or her duties. Id. at 21, 36 N.E. at 363. If communications between physician and patient are to be on the same footing with communications between attorney and client, then the physician-patient privilege would extend to agents of the physician while in the discharge of their duties. The Supreme Court has endorsed such an extension of the physician-patient privilege:
"[C]ontrary to the strict rules for construing statutes, the one in question [now IND. CODE § 34-1-14-5] has been somewhat broadened to include as privileged, not only communications by the patient to his physician, but any other information the physician may obtain *414 from a physical examination of the patient, or by observation while in the discharge of his professional duty, or knowledge gained through the intervention of a third party, with a view to intelligent treatment." (Emphasis added.)

Myers v. State (1922), 192 Ind. 592, 599-600, 137 N.E. 547, 550.

See also North American Union v. Oleske (1917), 64 Ind. App. 435, 116 N.E. 68 (Where the intervention of a third person is necessary to facilitate communication between patient and physician with a view to intelligent treatment, neither the physician nor the third person may disclose the information so communicated);

Springer, supra, 137 Ind. at 22, 36 N.E. at 363 (privilege extends to necessary organs of communication between physician and patient).
In a more recent discussion of IND. CODE § 34-1-14-5, the Supreme Court has confirmed that the physician-patient privilege extends to the physician's agents:
"[T]he statute is limited in its wording to only `physician[s]' who are called upon to testify as `witnesses'... . The privilege naturally extends to those acting as an agent or arm of the physician when he is in consultation with or is treating a patient."

Green v. State (1971), 257 Ind. 244, 254, 274 N.E.2d 267, 272.
The majority relies upon the decision in General Acc. Fire and Life Ass. Co. v. Tibbs (1936), 102 Ind. App. 262, 2 N.E.2d 229, to support its conclusion that the physician-patient privilege does not include adjunct personnel. However, Tibbs is factually distinguishable from the instant case. The nurse in Tibbs did not gather information from the patient on behalf of and at the behest of the physician. Rather, the nurse independently observed the patient's condition at the time the patient was brought into the hospital, and the nurse was called as a witness to share those observations. Because Tibbs did not involve the intervention of a third person necessary for the purpose of transmitting information to the physician, the analysis from Tibbs is inapposite.
A case which is more closely analogous to the instant cause is Shultz v. State (1981), Ind. App., 417 N.E.2d 1127. In Shultz, a laboratory technician took a blood sample from the defendant to determine his blood alcohol content. The court decided that because the technician acted at the behest of the doctor who was treating the defendant, the laboratory technician was included under the doctor-patient relationship. Id. at 1134.
Like the laboratory technician in Shultz, the social worker in the case at bar acted on behalf of a medical doctor. Mr. Brown's responsibility was to gather information from the patient concerning the patient's background, presenting problem, medical history, social history and psychosocial status, which information was then submitted to the supervising psychiatrist for the formulation of a treatment plan. Mr. Brown was a necessary organ of communication between the patient and the psychiatrist. See Springer, supra, 137 Ind. at 22, 36 N.E. at 363. The physician-patient privilege extended to Mr. Brown.
Absent a waiver of the physician-patient privilege, Mr. Brown could not disclose the information communicated to him by C.P. The physician-patient privilege precluded not only Mr. Brown's testimony, but also the admission into evidence of the medical records prepared by him.
"The physician-patient privilege ... is generally designed to encourage a patient to be forthcoming with his physician in order to make known to the physician all information necessary for treatment no matter how embarrassing or humiliating. Therefore, the statutory purpose has been held to extend not only to prevent a physician from testifying orally to information obtained by him in the course of treatment, but also to prevent the records concerning the patient's treatment kept by the physician or by the hospital from being disclosed without the patient's consent."
Annot., 10 A.L.R.4th 552, 556-557 (1981).
*415 Whether it would frustrate the purposes of the juvenile code to deny admission of C.P.'s medical records is an irrelevant inquiry. The physician-patient privilege is of a higher order than the section of the Indiana Juvenile Code cited by the majority.
C.P. did not waive the physician-patient privilege.[1] Although C.P.'s mother signed a form consenting to the disclosure of the medical records prepared by Mr. Brown, the mother's authorization may not be imputed to C.P. so as to waive the privilege protecting C.P.'s communications to Mr. Brown.
The ingredients of a valid juvenile waiver are identified in IND. CODE § 31-6-7-3 (1988 Ed.). That statute provides in pertinent part:
"(a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:
* * * * * *
(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
(A) that person knowingly and voluntarily waives the right;
(B) that person has no interest adverse to the child;
(C) meaningful consultation has occurred between that person and the child; and
(D) the child knowingly and voluntarily joins with the waiver."
Id. at (a)(2).
In the instant case, C.P.'s mother executed a "Consent to Disclose Confidential Information" and a petition alleging delinquency on the same date. The mother's interest at the time she consented to disclosure was clearly adverse to C.P. Thus the consent form signed by C.P.'s mother did not operate as a waiver of the physician-patient privilege asserted by C.P.
To summarize, the physician-patient privilege extended to Mr. Brown, a third party whose intervention was essential to facilitate communication between C.P. and the psychiatrist with a view to intelligent treatment. C.P. had not waived the physician-patient privilege. Therefore, the trial court erred in admitting, over C.P.'s objections, the testimony of Mr. Brown and the medical records prepared by him.
NOTES
[1] The majority did not reach the waiver issue, concluding instead that the physician-patient privilege did not extend to Mr. Brown.