Jack L. DARNELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9605–CR–172.

Court of Appeals of Indiana.

Nov. 27, 1996.

David D. Kiely, Evansville, for Appellant–Defendant.

Pamela Carter, Attorney General, James D. Dimitri, Deputy Attorney General, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

In 1936, this court declined to recognize a privilege for communications between a nurse and his or her patient, absent an express provision created by the legislature. *General Accident, Fire & Life Assurance Co. v. Tibbs*, 102 Ind.App. 262, 269, 2 N.E.2d 229, 233 (1936). Today, appellant-defendant Jack L. Darnell asks this court to re-examine our prior holding because of public policy and the changing relationship between nurses and their patients. He contends that since nurses now perform many duties traditionally performed by physicians, we should extend the physician-patient privilege to cover communications between patients and their treating nurses.

## FACTS

On the evening of March 31, 1993, Darnell and his wife, Tammy, were socializing and consuming alcoholic beverages with Rodney Neal and his cousin, Karla Jo Krieg, at the Darnell home. At some point during the evening, Darnell's wife, Tammy, began to flirt with and made advances towards Neal. Tammy's actions provoked an argument between Darnell and Neal which quickly escalated into a fight. During the fight, Darnell stabbed Neal twice in the chest with a knife. Darnell also suffered injuries as a result of the fight, for which he sought treatment at a hospital emergency room. In the emergency room, Darnell was treated by the on-duty emergency room nurse, Sarah Rea, and Dr. Taylor, the emergency room physician. While Nurse Rea treated him, Darnell revealed that an intruder had entered his home and stabbed him. Darnell further stated that he had been drinking before the struggle ensued, but denied stabbing the attacker. Record at 210.

On April 5, 1993, Darnell was charged with Battery,[1] a Class C felony. Darnell was tried before a jury on March 21, 1994. At trial, Darnell asserted that he had stabbed Neal in self-defense after Neal attacked him. R. at 171, 187. In contrast, Nurse Rea testified that Darnell told her that while he had been attacked by another person in his home, he never stabbed his attacker. R. at 210. Thereafter, Darnell was convicted as charged and sentenced to four years imprisonment.

## DISCUSSION AND DECISION

Darnell contends that the trial court erred in admitting Nurse Rea's testimony, claiming that the statements he made to Nurse Rea while receiving treatment in the emergency room were privileged communications. Although Darnell concedes that the legislature has not expressly created a provision to protect communications between a nurse and a patient, he asserts that as a matter of justice and public policy, this court should extend the physician-patient privilege to include nurses. Darnell makes this assertion based upon the fact that nurses presently perform duties traditionally performed by physicians.[2]

 Whether a communication is privileged is determined by statute. *Scroggins v.*

---

1. IND. CODE § 35–42–2–1.

2. Darnell also concedes that this court has previously rejected a request to extend the physician-patient privilege to communications between nurses and patients in *General Accident*, 102 Ind. App. 262, 2 N.E.2d 229 (1936). However, he

*Uniden Corp. Of America*, 506 N.E.2d 83, 85 (Ind.Ct.App.1987), *trans. denied*. However, whether a privileged relationship exists which would give rise to a statutorily-created privilege is a question of fact to be determined by the trial court. *Matter of C.P.*, 563 N.E.2d 1275, 1279 (Ind.1990). If we find that the trial court's decision regarding the existence of a privileged relationship is supported by substantial evidence, we will affirm its decision. *Id.*

■■■ The physician-patient privilege protects, among other communications, those made "by patients" to their physicians "in the course of their professional business, or advice given in such cases." IND. CODE § 34–1–14–5. The purpose of the privilege is to protect communications between a patient and his or her physician so that the patient may receive the necessary treatment or diagnosis. *Thomas v. State*, 656 N.E.2d 819, 822 (Ind.Ct.App.1995). At common law, however, communications between a physician and a patient were not privileged. *Matter of C.P.*, 563 N.E.2d 1275, 1277 (Ind.1990). Therefore, because the physician-patient privilege statute is in derogation of the common law and impedes the search for truth, it is to be strictly construed. *Matter of C.P.*, 563 N.E.2d at 1277.

■■■ A "physician" is defined as "a person who has received the degree of doctor of medicine from an incorporated institution; one lawfully engaged in the practice of medicine." *William Laurie Co. v. McCullough*, 174 Ind. 477, 488, 90 N.E. 1014, 1018 (1910). Thus, statements made to someone who holds the required degree and who lawfully practices medicine are protected by the physician-patient privilege. Our supreme court has extended this privilege to third persons who aid physicians or transmit information to physicians on behalf of patients. *Springer v. Byram*, 137 Ind. 15, 22, 36 N.E. 361, 363

(1894); *Doss v. State*, 256 Ind. 174, 181, 267 N.E.2d 385, 390 (1971). For example, a laboratory technician who draws blood under the supervision of an attending physician is considered to be someone who aids the physician and who is, therefore, covered by the physician-patient statute. *Shultz v. State*, 417 N.E.2d 1127, 1134 (Ind.Ct.App.1981).

In *Matter of C.P.*, 563 N.E.2d 1275 (Ind. 1990), our supreme court set forth a test for determining whether communications between a third party and a patient are covered by the physician-patient privilege. In *Matter of C.P.*, the court considered whether the communications between a social worker and a patient are covered under the physician patient privilege. In that case, a social worker provided therapy, diagnosis, and treatment to C.P, an incorrigible child. *Id.* at 1276. Although C.P. was never examined by a psychiatrist, the social worker did submit his proposed treatment plan to the psychiatrist for approval. *Id.* Thereafter, the social worker was asked to testify regarding his communications with C.P. *Id.* C.P. objected, complaining that his conversations with the social worker were protected by the physician-patient privilege. *Id.*

The court held that the communications between C.P. and the social worker were not privileged because the social worker treated C.P. with little intervention from the psychiatrist. *Id.* at 1279. The court noted that the key to whether third parties, such as social workers, are covered by the physician-patient privilege is the "nature and degree of control exercised" by the physician. *Id.* at 1278. For example, if the physician exercises substantial control in treating the patient and the social worker merely aids the physician, then the physician-patient privilege covers the third party. *Id.* This holding is based on the idea that patients who are being treated by a physician should be entitled to trust someone who works under the close supervision of the physician to the same de-

encourages this court to re-examine its previous holding. In *General Accident*,, we discussed the applicability of the physician-patient privilege statute, IND. CODE ANN. § 2–1714 (Burns 1933), which provided that physicians were not competent witnesses as to matters communicated to them by their patients, to communications which occurred between nurses and their patients. This court found that because nurses

were not specifically included under the statute, the legislature did not intend for the privilege to cover communications between nurses and their patients. *General Accident*, 102 Ind.App. at 269, 2 N.E.2d at 233. The court further noted that any policy considerations regarding the applicability of the privilege to nurses should be left to the legislature. *Id.*

gree that they can trust the physician. *Id.* However, when the third party does not work under the close supervision of a physician and is, therefore, the primary caretaker of the patient, the patient will not assume that the third party is covered by the physician-patient privilege. *Id.*[3] Relying on this reasoning, we later determined that statements made to a marriage counselor, who acted independently of a physician, were not covered by the physician-patient privilege. *Bishop v. Goins*, 586 N.E.2d 905 (Ind.Ct.App. 1992).[4]

We now turn to the facts of this case. As discussed above, in order for the physician patient privilege to cover Nurse Rea's statements, Darnell must show that either Nurse Rea is a "physician" or that she treated Darnell under the direct supervision of a physician. Here, there is no evidence in the record that Nurse Rea held the required degree for a physician to lawfully practice medicine. Therefore, she is not considered a "physician" under the statute. Nor does the record reveal that Dr. Taylor or any other physician ordered Nurse Rea to treat Darnell. Although we note that all nurses work under the general supervision of a physician, a closer degree of supervision or control by the physician must exist in order for the physician-patient privilege to be applicable. Thus, pursuant to the standard set forth in *Matter of C.P.*, Darnell could not reasonably have believed that Nurse Rea was covered under the physician-patient privilege.[5]

Nevertheless, Darnell urges this court to go beyond *Matter of C.P.* and declare that all communications between nurses and their patients are privileged. However, the decision to create a privilege covering an entirely new class of persons should be left to

the legislature. In strictly construing the statute, we note that "physicians" and not nurses are listed in the statute. We must, therefore, assume that the legislature did not intend to make all communications between nurses and patients privileged. Furthermore, were we to recognize that all communications between nurses and patients were privileged, we would be limiting the amount of testimony which could be offered at trial and, thereby, impeding the search for truth. As a result, we must decline Darnell's invitation and leave such policy decisions to the legislature. The trial court, therefore, did not err in admitting Nurse Rea's testimony.

Notwithstanding our decision that the statute does not cover the communication, we note further that the statement which Darnell claims prejudiced him was not made for purposes of treatment and diagnosis. In the emergency room, Darnell informed Nurse Rea that he never stabbed his attacker. However, this statement was not made for the purpose of his treatment but merely revealed how he reacted after he was attacked. Therefore, because the statement was not necessary to Nurse Rea's treatment of Darnell's injuries, it was not a privileged statement. *See Corder v. State*, 467 N.E.2d 409, 415 (Ind.1984) (physician-patient privilege does not apply unless communications are made for purposes of treatment or diagnosis).

The trial court's judgment is affirmed.

ROBERTSON and RILEY, JJ., concur.

---

3. After *Matter of C.P.* was decided, the legislature enacted IND. CODE § 25–23.6–6–1 which makes communications between a social worker and a client privileged when the communications are made to the social worker in his or her official capacity.

4. Following the court's holding in *Bishop*, the legislature enacted IND. CODE § 25–23.6–9–1 making communications between a certified marriage counselor and a patient privileged.

5. This court has recognized an exception to the general rule requiring physician control of the patient's treatment in circumstances where the

patient is compelled by the trial court to seek such treatment. *See, e.g., Daymude v. State*, 540 N.E.2d 1263, 1268 (Ind.Ct.App.1989) (communications between defendant and family counselor held to be privileged where court required defendant to participate in counseling under threat of court action), *trans. denied; Sims v. State*, 601 N.E.2d 344, 346 (Ind.1992) (communications between defendant and therapist held to be privileged where defendant ordered to complete sexual abuse treatment program and where noncompliance could have resulted in contempt of court or probation violation). However, Darnell does not argue, nor do the facts reveal, that this exception is applicable to this case.