**A.B.C. HOME & REAL ESTATE INSPECTION, INC., and George Cline, Defendants-Appellants,**

v.

**Thomas PLUMMER and Cathy Plummer, Plaintiffs-Appellees.**

No. 49A02–8604–CV–136.

Court of Appeals of Indiana, Third District.

Dec. 8, 1986.

Rehearing Denied Jan. 21, 1987.

Frank E. Spencer, Indianapolis, for defendants-appellants.

Jennifer L. Graham, Lewis, Kappes, Fuller & Eads, Indianapolis, for plaintiffs-appellees.

HOFFMAN, Judge.

A.B.C. Home & Real Estate Inspection, Inc., and George Cline appeal the adverse judgment entered against them in this action begun by Thomas and Cathy Plummer. The suit was tried without a jury and was decided on the trial court's written findings of fact and conclusions of law. On appeal A.B.C. and Cline raise a battery of issues; however, the basic facts are not in dispute and are simply stated.

In March of 1982 the Plummers were interested in purchasing an older house on the west side of Indianapolis. As part of their decision process, the Plummers asked their agent, Ludlow Realty, to arrange for a home inspection. The agent suggested using A.B.C.

The Plummers accepted this suggestion, in part, because they had seen A.B.C.'s advertisement in a widely distributed real estate circular. The advertisement listed George Cline as the "Owner-Contractor" and implied that A.B.C. was licensed to perform home inspections. The evidence was uncontroverted that neither A.B.C. nor Cline was licensed to perform home inspections. There is no license required to perform this service.

On March 24, 1982, George Cline inspected the house. He in turn prepared an inspection report which was sent to the Plummers. The report noted that the electrical system was improperly fused, that there were problems with slow drains and inadequate water flow, but that otherwise the plumbing was functioning properly. The report also noted a problem with the air conditioner. Finally the report noted that "Roof is good no sign of leaks," and that, "Condition of chimney good." The inspection report's heading implied that A.B.C. was licensed, bonded and insured for home inspections. The report, which was signed by "George E. Cline/Inspector," also contained an exculpatory clause which is discussed below.

In reliance on this report the Plummers made an offer to purchase the house. The offer was contingent on the seller repairing the defects listed in the inspection report. Their offer was accepted and the Plummers subsequently moved in.

Shortly after taking possession, the Plummers discovered significant leaks in the water pipes caused by severe corrosion. At about the same time they began to experience problems with the electrical system and ultimately they had to do extensive work to both the electrical and plumbing systems. One night, in December 1982, the Plummers were awakened by the bedroom ceiling collapsing. Investigation revealed that there were numerous leaks in the roof. There was a large sheet of plastic hung to catch water which had apparently overflowed, causing the interior damage. A roofing contractor called by the Plummers testified that the roof had been repeatedly patched and that the attic rafters were rotted from constant exposure to moisture. He further testified that the damage could not have occurred in the short time the Plummers had owned the house.

The Plummers attempted to contact A.B.C. and Cline, both by phone and by letter. The letter outlined the problems they had been having and expressed the opinion that A.B.C. was responsible for the expenses. Neither A.B.C. nor Cline ever responded and the present action ensued.

The Plummers also had their chimney inspected by a masonry contractor. They were told that the chimney was in dangerous condition and that it would have to be rebuilt from below the roofline. At trial the contractor testified that the deterioration would have taken over ten years.

At trial, George Cline testified that he personally inspected the Plummers' residence. He said that he performs one standard type of home inspection, regardless of whether the inspection is for an individual or for a VA or FHA insured mortgage. He also testified that he would not have passed the Plummers' home for a VA or FHA

loan, because of the defects. He further stated that he never knows beforehand who an inspection is before. Finally, Cline testified that he is the "owner" of A.B.C. and that the corporation has never issued shares of stock.

On the basis of these facts, the trial court concluded that the home inspection contract had been completely breached and awarded the Plummers $3,500.00 as the expenses of the repairs. The trial court then found that A.B.C. was a sham corporation, and a mere alter ego of George Cline and therefore found him personally liable.

The trial court next concluded that A.B.C.'s advertisement was a violation of the Deceptive Consumer Sales Act. IND. CODE § 24-5-0.5 et seq. (1986 Supp.). Pursuant to its interpretation of the statute, the trial court awarded $3,200.00 in attorney's fees and enjoined Cline and A.B.C. from further deceptive acts. Finally the trial court awarded punitive damages of $1,000.00, for a total award of $7,700.00.

A.B.C. and Cline raise a number of issues that must be separately addressed. Restated and consolidated these are:

 (1) whether the trial court erred in finding Cline personally liable;

 (2) whether there was a contractual relationship between A.B.C. and the Plummers;

 (3) whether A.B.C. was released from liability by the stipulated dismissal of Ludlow Realty;

 (4) whether A.B.C.'s exculpatory clause barred liability;

 (5) whether the Deceptive Consumer Sales Act was properly applied;

 (6) whether the damages are excessive; and

 (7) whether punitive damages were properly allowed.

The first issue that Cline raises is that the trial court erred by finding him personally liable, even though he was never served with process or named as a party distinct from A.B.C. This attack is really two-fold, because Cline questions both the piercing of A.B.C.'s corporate veil, and the finding of personal liability without service.

■ Factually, the trial court's conclusion is primarily supported by Cline's admission that A.B.C. has never issued corporate stock. In Indiana issuance of shares is a precondition to doing business as a corporation. IND.CODE § 23-1-3-5 (repealed effective 8/1/87).[1] If this condition is not met, then the supposed corporation will be treated as if it were a partnership or a sole proprietorship. Any contracts entered into by the promoters are entered into in their own names and they are personally liable for the obligations created. *Sterne v. Fletcher American Co.* (1932), 204 Ind. 35, 181 N.E. 37, *reh. denied.*

■ Additionally, Cline advertised himself as the "owner" of the business and the contractor's licenses that he advertised were held in his name alone. These are facts that reinforce the conclusion that Cline was doing business as A.B.C. and not as a corporation.

■ The trial court's finding Cline personally liable also presents no difficulty. Cline contends that the holding denies him due process, because he was not named as an original party. The record reveals that Cline accepted service of the complaint and he was present throughout the trial. Cline, therefore, cannot claim that he was unaware of the suit or of the issues involved. Moreover, while the veil piercing issue was not raised by the pleading, the issue was clearly raised at trial without objection from Cline. Issues not raised by the pleadings, but tried by express or implied consent are treated in all respects as if they had been raised by the pleadings.

Ind.Rules of Procedure, Trial Rule 15(B); *James v. Brink & Erb, Inc.* (1983), Ind. App., 452 N.E.2d 414.

---

1. As far as can be determined, the new Corporations Act which becomes fully effective on August 1, 1987, contains no provision that is analogous to IND.CODE § 23-1-3-5. Therefore it appears the holding on this issue has limited prospective application.

The testimony regarding A.B.C.'s corporate structure and its observance of corporate formalities was only relevant to establishing that A.B.C. was a sham and to establishing Cline's personal liability. If Cline had a due process objection to being found personally liable, he was required to object at the proper time. Since he did not, he cannot now complain that he was surprised, nor that he has been denied due process of law.

A.B.C. and Cline next urge that the trial court erred in finding liability, because there was no contractual relationship between A.B.C. and the Plummers. While the Plummers' agent arranged for the inspection, the contract that was formed was a classic third-party beneficiary contract. The Plummers, as the third-party beneficiaries were legally entitled to sue under the contract.

See, Mogensen v. Martz (1982), Ind.App., 441 N.E.2d 34; Fiat Distributors v. Hidbrader (1978), 178 Ind.App. 200, 381 N.E.2d 1069.

By their next issue, A.B.C. and Cline claim that the Plummers have released them from liability. The Plummers originally sued both A.B.C. and their agent, Ludlow Realty. Before trial the Plummers and Ludlow jointly executed a "Stipulation of Dismissal" which simply recited that the parties stipulated that the action should be dismissed as to Ludlow Realty only. The trial court accordingly issued an order dismissing Ludlow.

A.B.C. and Cline claim that the stipulated dismissal was a release. They cite cases that stand for the rule that a release of one joint-tortfeasor is a release of all joint-tortfeasors. While the present action is primarily based in contract, not tort, the same general rule applies to contracts actions as well. Kirby v. Cannon (1857), 9 Ind. 371.

In the present case it is unnecessary to decide whether the dismissal was a release or some other type of transaction, because it is clear that A.B.C. and Ludlow were not joint actors. The Plummers' original complaint premised Ludlow's alleged liability on its supposed failure to properly perform its contract to facilitate the purchase of the real estate. On the other hand, A.B.C.'s liability is primarily based on its failure to adequately perform its contract to inspect. The Plummers' claims against Ludlow and A.B.C. were predicated on separate breaches of different contracts. Since the parties could not have been held jointly liable, a release of Ludlow was not a release of A.B.C. General Acc., Fire & Life Ass. Co. v. Tibbs (1936), 102 Ind.App. 262, 2 N.E.2d 229.

A.B.C.'s and Cline's next issue regards the exculpatory clause contained in the inspection report. This clause which appeared above Cline's signature read:

"We certify that this inspection shall in no way be mistaken for a warranty of guarantee as to the condition of the above listed items at the designated location...."

A.B.C. and Cline contend that this shields them from liability. However it is unnecessary to decide whether this language is as effective as claimed.

The evidence is that the clause was only contained in the inspection report. The inspection report was obviously not delivered to the Plummers until after the inspection had been requested and agreed to. The rule is that even a properly worded modification of warranty is ineffective if it is not delivered to the buyer until after the contract has arisen. Hahn v. Ford Motor Co., Inc. (1982), Ind.App., 434 N.E.2d 943, trans. denied. The delivery of the inspection report was the contract's culmination, not its inception and A.B.C.'s exculpatory clause is ineffective. It is worth noting this is the exact situation that the rule adopted in Hahn was intended to limit. It is completely inconsistent with good business and fair dealing to permit a supplier to initially induce public reliance, then after the contract has been made, to avoid responsibility through vaguely worded exculpatory clauses. Consequently there was no error in finding A.B.C.'s at-

tempted modification of warranty clause ineffective against the Plummers.

The next issue raises the question of whether the trial court properly found that A.B.C. and Cline had violated the Deceptive Consumer Sales Act. IND.CODE § 24–5–0.5 *et seq.* (1986 Supp.). The pertinent, practical effect of this act is to permit a successful plaintiff to recover attorney's fees and actual damages. To this end, the trial court found that A.B.C.'s advertisement was a deceptive act; it claimed that A.B.C. or Cline was licensed to perform home inspections. *See,* IND.CODE § 24–5–0.5–3(a)(7) (1986 Supp.).

■ As the trial court was aware, finding a deceptive act is not the only precondition to recovery. The act also contains notice and time limitations as explained in IND.CODE § 24–5–0.5–5(a) (1982):

"Sec. 5. (a) No action may be brought under this chapter, except under Section 4(c) of this chapter, unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act."

Thus, before a consumer can establish liability, there must either be compliance with the notice requirements coupled with proof that the act is "uncured" or proof that the act is "incurable."

An incurable deceptive act is defined at IND.CODE § 24–5–0.5–2(7) (1986 Supp.):

" 'Incurable deceptive act' means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead."

Alternatively, an uncured deceptive act is somewhat more complicated and is defined at IND.CODE § 24–5–0.5–2(6) (1986 Supp.):

" 'Uncured deceptive act' means a deceptive act:

(A) with respect to which a consumer who has been damages by such act has given notice to the supplier under section 5(a) of this chapter; and

(B) either:

(i) no offer to cure has been made to such consumer within thirty (30) days after such notice; or

(ii) the act has not been cured as to such consumer within a reasonable time after his acceptance of the offer to cure."

In this case, the trial court specifically found that the advertisement constituted an uncured deceptive act and that the Plummers had complied with the notice requirements.

On January 14, 1983 the Plummers sent a letter to A.B.C. which described, in considerable detail, the problems that they were having with the roof. The Plummers attributed their undeniably expensive problems to A.B.C.'s failure to properly inspect. Unfortunately this is not the type of notice the statute requires.

■ The notice required by IND.CODE § 24–5–0.5–5(a) must contain not only a complete description of the actual damage suffered, but also a description of the alleged deceptive act. The obvious reason for this requirement is so that the supplier has an opportunity to correct the problem. The Plummers' letter failed to adequately fulfill either of the requirements.

■ The letter spoke of the roof and the interior damage caused by the leaks; however, the leaks were but a single item in the lengthy list of damage. The letter also wholly failed to apprise A.B.C. of the nature of the deceptive act, which the trial court specifically found to be the advertisement. In reviewing special findings, the Court of Appeals is bound by the legal theory used by the trial court and cannot adopt an alternate theory, even when clearly supported by the evidence. *Best v. Best* (1984), Ind.App., 470 N.E.2d 84.

Since the finding of compliance with the notice requirements is clearly erroneous, the finding of liability, under the statute, must be reversed. This, however, does not necessitate a complete reversal. As has already been found, A.B.C.'s liability is also properly grounded on its breach of the contract to inspect. Thus reversal on this issue only leads to deleting the award of attorney's fees and to lifting the injunction that the trial court imposed.

A.B.C. and Cline next contend that the measure of actual damages employed by the trial court places the Plummers in a better position than they were before A.B.C.'s action. Therefore, the appellants conclude the damages are excessive.

 The damages recoverable in a breach of contract case are limited to actual damages suffered. *Bymaster v. Bankers Nat. Life Ins. Co.* (1985), Ind.App., 480 N.E.2d 273, *trans. denied.* Actual damages include those reasonable expenses that are a natural consequence of the breach. *Ethyl Corp. v. Forcum-Lannom Associates* (1982), Ind.App., 433 N.E.2d 1214, *trans. denied.* The evidence clearly demonstrates that the Plummers relied on A.B.C.'s and Cline's representations that the house was in good repair. The evidence also amply shows that A.B.C. and Cline completely breached its contract. As a direct consequence of the breach, the Plummers spent $3,500.00 to obtain what Cline and A.B.C. had said they were originally getting. The evidence clearly supports the award and there was no error in the method of calculation.

 The final issue raised is whether the $1,000.00 punitive damage award was proper. Indiana's standard for punitive damage awards places a heavy burden on the plaintiff. In order to justify an award of punitive damages there must be clear and convincing evidence that overcomes the presumption that the defendant's conduct was merely negligent or the product of some honest error. *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019. Breach of contract actions are traditionally infertile ground

for punitive damages. Before punitive damages are properly awardable in a contract action, there must be additional evidence that defendant's conduct is independently tortious; that there are elements of fraud, malice or gross negligence intermixed with the breach. Finally, in all punitive damage situations the evidence must support a finding that the public interest will be served by the addition of punishment to the already adequate compensation.

*Art Hill Ford, Inc. v. Callender* (1981), Ind., 423 N.E.2d 601; *Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, *trans. denied.*

 The trial court found that A.B.C. and Cline were not only careless, but grossly negligent in their inspection of the Plummers' house and also that this conduct manifested a reckless disregard of the Plummers' rights. Additionally, the trial court found that A.B.C.'s advertisements contained intentional misrepresentations that were intended to mislead consumers into misplaced reliance. The record supports these findings, which in turn fully support the award of punitive damages.

Cline's gross negligence is obvious. In the inspection report he stated, "Roof is good no sign of leaks." Yet within a few months the bedroom ceiling collapsed, because of roof leaks. Simple visual inspection of the attic revealed a plastic tarp placed to catch in-coming water and wooden supports rotted from long term exposure to moisture. The plumbing had to be extensively repaired, yet Cline only noted slow drains. The chimney was in dangerous condition, and apparently had been for several years, yet Cline advised the chimney was in good condition. These are clearly negligent acts committed with complete disregard for the consequences.

A.B.C.'s advertisements implied that it was licensed to inspect homes. The inspection report itself implied that A.B.C. or Cline were bonded and insured. Both of these implications were completely false and both were calculated to induce reliance

on A.B.C.'s and Cline's ability to inspect homes in a professional manner.

This evidence overwhelms the presumption that A.B.C.'s conduct was merely negligent or a mistake of fact. A.B.C.'s conduct demonstrates gross negligence and fraudulent misrepresentation. In today's society, home inspection is a valuable service to buyers who have little knowledge of the mechanical aspects of their homes. Home inspectors are not insurers of the homes they inspect; however, the public must expect a standard of care far higher than that exhibited by A.B.C. and Cline. Thus the public interest is furthered by deterring this sort of rapacious behavior. There was no error in awarding punitive damages.

This cause is reversed to the extent of the attorney's fees and the injunction awarded under the Deceptive Practices Act. In all other things the trial court is affirmed.

Reversed in part and affirmed in part.

STATON, P.J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I concur with the majority except for its determinations that judgment was properly entered against George Cline, individually, and that punitive damages were properly awarded.

Concerning the first of these issues I quite agree that the evidence was ample to establish personal liability on the part of Cline. The majority appears to me, however, to confuse this basis for liability with the basis for jurisdiction to enter a judgment. Jurisdiction to enter a personal judgment depends upon the court having personal jurisdiction over the person in question, and George Cline was never made a party to this lawsuit. He was not sued individually and served summons, and no motion was ever made to add him or substitute him as a party.

Pursuant to Indiana Rules of Procedure, Trial Rule 4(A):

"The court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance, or who is subjected to the power of the court under any other law."

See State ex rel. Travelers Ins. Co. v. Madison Sup. Ct. (1976), 265 Ind. 287, 354 N.E.2d 188; see also Idlewine v. Madison Co. Bank & Trust Co. (1982), Ind.App., 439 N.E.2d 1198.

The majority seeks to avoid the consequences of this basic flaw by pointing out that Cline accepted service of the complaint and was present throughout the trial. It also asserts that the question of piercing the corporate veil was actually litigated without objection.

Both assertions are subject to the very defect that concerns me: Cline was never put on legal notice that he might be held personally liable. The complaint and summons were addressed to A.B.C. and Cline's acceptance of them and presence at trial as an officer of A.B.C. were appropriate without regard to any claim of personal liability. Similarly, as a non-party he had no personal standing to object to the evidence offered at trial or any particular motivation to do so.

I wholeheartedly agree that his conduct concerning the Plummers was reprehensible. But the court was without jurisdiction to enter judgment against him personally as a non-party.

Concerning the award of punitive damages the trial court's special findings are simply inadequate to justify the award under the restrictions imposed by Orkin Exterminating Co., Inc. v. Traina (1986), Ind., 486 N.E.2d 1019 and Travelers Indemnity Co. v. Armstrong (1982), Ind., 442 N.E.2d 349.

I therefore dissent.