Orval LEHMAN, Appellant–
Respondent,

v.

Vickie SHROYER d/b/a Shroyer Pools
& Spas, Appellee–Plaintiff.

No. 18A02–9903–CV–202.

Court of Appeals of Indiana.

Dec. 30, 1999.

---

**14.** $2,454 \div 8,546 = 29\%$.

Mark L. Abrell, Dennis Wenger & Abrell, Muncie, Indiana, Attorney for Appellant.

John Thrasher, South Royalton, Vermont, Attorney for Appellee.

**OPINION**

SULLIVAN, Judge

Appellant, Orval Lehman (Lehman), appeals the judgment of the trial court awarding Vickie Shroyer d/b/a Shroyer Pools & Spas (Shroyer) $6,858.78 for work done on Lehman's residential swimming pool.

We affirm.

Lehman presents the following issues for review which we restate as follows:

(1) Whether the trial court erred in concluding that the Deceptive Consumer Sales Act [1] did not apply to the dealings between Lehman and Shroyer; and

(2) Whether Shroyer waived the issue of Lehman's failure to give notice of a deceptive act when Shroyer did not include the issue as an affirmative defense in Shroyer's answer to Lehman's counterclaim.

The record reveals that Shroyer operates a business which includes the repair and maintenance of private in-ground pools. In November 1995, Lehman had a conversation with Shroyer's husband, Don, at Lehman's place of business regarding the cost of a new pool liner, pump, and filtration system for his pool. Lehman had been acquainted with the Shroyers for several years, and Don was picking up his truck which had been serviced at Lehman's place of business on the day the conversation arose about repairing and upgrading Lehman's pool. Although Don did do some work for his wife's business, he did not have access to any business catalogs or records needed to make a detailed estimate for the work about which Lehman was inquiring. Don did make a "ballpark" guess that the repairs would cost around $5,500. Record at 137.

Lehman eventually hired Shroyer to install a new liner, pump, and filtration system. The parties did not sign a written contract, and Shroyer did not tender a

---

**1.** I.C. 24–5–0.5–1 *et seq.* (Burns Code Ed. Repl.1996 & Supp.1999).

written estimate. Shroyer began the work on Lehman's pool on May 9, 1996, and later, Lehman made a request that he wanted the best upgrades for his pool. Per Lehman's request, Shroyer installed a thicker liner and a different pump and filtration system than those which were originally discussed. Shroyer and Lehman did not discuss the additional costs which would be incurred as a result of installing these more expensive items.

The repair work was completed on July 18, 1996, and Shroyer helped close Lehman's pool in the fall of 1996. Shroyer did not bill Lehman for the work completed upon his pool until early March 1997. The bill totaled over $7,300. Lehman did not pay the bill. Instead, he and his wife communicated that they would like to discuss the bill. In September 1997, the parties met to discuss the bill, but no agreement was reached. After the meeting, Shroyer's attorney sent Lehman a letter on September 26, 1997, demanding Lehman remit $6,858.78 for the repair work on the pool or face legal action.[2] On October 21, 1997, Lehman's attorney then sent a reply letter to Shroyer's attorney which stated his client was only willing to pay $5,335.45.

On October 22, 1997, Shroyer filed a complaint against Lehman to recover $13,-717 based upon unjust enrichment. Lehman's answer contained counterclaims and affirmative defenses which included one counterclaim asserting that Shroyer committed a deceptive sales act pursuant to I.C. 24–5–0.5–1 et.seq. (Burns Code Ed. Repl.1996 & Supp.1999). Shroyer, in her answer to Lehman's counterclaims, denied committing a deceptive sales act. After a bench trial held on December 4, 1998, Lehman requested special findings of fact and conclusions of law pursuant to Trial Rule 52(A). On February 1, 1999, the court issued findings of fact and conclusions of

law and awarded Shroyer $6,858.78, finding for Shroyer and against Lehman on his counterclaims. The trial court found that the Deceptive Consumer Sales Act did not apply to the dealings between Shroyer and Lehman.

■ Our standard of review for findings of fact and conclusions of law issued pursuant to T.R.52(A) is one of great deference. We will not set aside a judgment unless it is clearly erroneous. *Town and Country Ford, Inc. v. Busch* (1999) Ind. App., 709 N.E.2d 1030, 1032. We will review the evidence favorable to the judgment and all reasonable inferences therefrom. *Id.* A judgment is clearly erroneous only if a review of the record leaves us with a firm conviction that a mistake has been made. *Id.*

In the instant case, Lehman asserts that the trial court's conclusion that the Deceptive Consumer Sales Act did not apply was not supported by its findings of fact or the evidence. The Deceptive Consumer Sales Act "provides for two kinds of actionable deceptive acts: 'uncured' deceptive acts and 'incurable' deceptive acts." *McKinney v. State* (1998) Ind., 693 N.E.2d 65, 68. IND.CODE 24–5–0.5–5(a) provides:

> "[n]o action may be brought under this chapter ... unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act."

---

2. The record does not clearly reflect the reason for the difference between the original bill sent by Shroyer in March 1997, and the demand letter sent by Shroyer's attorney in September 1997. However, the adjustment may, in part, be reflected by a payment made by Lehman in June 1997, for $448.04. Record at 225.

■ Thus, to establish liability, "there must either be compliance with the notice requirements coupled with proof that the act is 'uncured' or proof that the act is 'incurable.'" *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer* (1986) Ind. App., 500 N.E.2d 1257, 1262. An incurable deceptive act is an "act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." I.C. 24–5–0.5–2(7). The definition of an uncured deceptive act is more complex. An uncured deceptive act "means a deceptive act" with "respect to which a consumer who has been damaged by such act has given notice to the supplier under section 5(a) [IC 24–5–0.5–5(a) ]of this chapter;" and either no offer to cure has been made to the consumer within thirty days after the notice or the act has not been cured within a reasonable time after the acceptance of the offer to cure. I.C. 24–5–0.5–2(6).

■ Here, Lehman does not challenge the trial court's specific finding that Shroyer did not commit a "deceptive act which was part of a scheme, artifice, or device with intent to defraud or mislead defendant." Record at 70. Therefore, to be successful under the Deceptive Consumer Sales Act, Lehman must prove that Shroyer committed an uncured deceptive act and also must comply with the notice provisions in I.C. 24–5–0.5–5(a).

In *A.B.C. Home & Real Estate Inspection, Inc., supra*, 500 N.E.2d 1257, a married couple requested a home inspection in conjunction with buying an older house. The couple chose a company based upon an advertisement which stated that it was licensed to perform home inspections. The company performed the inspection, and the couple relied upon the report and purchased the home. After taking possession, many serious problems were discovered which were not revealed in the inspection report. The couple then learned that the company was not licensed to perform home inspections, and they sent a letter to the company explaining the problems they were having with their home. The couple eventually sued, alleging that the advertisement was a violation of the Deceptive Consumer Sales Act. This court, however, determined that the couple could not bring suit under the act because they did not give the company notice pursuant to the statute before bringing the suit. *Id.* at 1262–63. Notice pursuant to I.C. 24–5–0.5–5(a) requires both a complete description of the actual damage suffered and a specific description of the alleged deceptive act. The court held that the couple's letter did not qualify as the type of notice required by the statute because the letter failed to identify a deceptive act, namely the advertisement. *Id.*

■ Similarly, Lehman did not give Shroyer proper notice under the statute before he filed his counterclaim alleging a deceptive act. Lehman and his wife simply refused payment upon receiving the statement, and instead returned it, noting that they would like the Shroyers to stop by to discuss the bill. When the Lehmans and the Shroyers eventually met to discuss the bill, no act of deception was alleged. Further, when Lehman's attorney sent a reply letter to Shroyer's demand, only the amount which Lehman was willing to pay was included. This letter did not specifically allege any act of deception. Failing to properly notify Shroyer of the alleged deceptive act under the requirements of I.C. 24–5–0.5–5(a) precludes Lehman from bringing a successful claim under the Deceptive Consumer Sales Act. The intent of the act is "to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *McCormick Piano & Organ Co. v. Geiger* (1980) Ind.App., 412 N.E.2d 842, 849. The notice requirement of the act gives the supplier a reasonable opportunity to remedy the consequences of an alleged deceptive act about which the

consumer complains. To fulfill this purpose, "a literal application of the notice provisions" is required. *Id.* In the instant case, Lehman gave Shroyer no such opportunity to correct the damage caused by an alleged deceptive act. It was reasonable for the trial court, therefore, to conclude that the act did not apply to the dealings between Shroyer and Lehman.

■ Lehman also contends that Shroyer has waived the issue of notice because the answer to Lehman's counterclaim failed to raise notice as an affirmative defense. Because the failure on the part of a consumer to give proper notice to the supplier of an uncured deceptive act precludes the application of the statute altogether, notice should not be characterized in terms of whether a supplier waives the right to challenge a consumer's notice if it does not raise it as an affirmative defense. Rather, notice, one of the prerequisites with which a consumer must comply in order to bring an action under the Deceptive Consumer Sales Act, is a question of statutory application. *McCormick Piano & Organ Co., supra,* 412 N.E.2d at 849; *Captain & Co. v. Stenberg* (1987) Ind.App., 505 N.E.2d 88, 95, *trans. denied.* It is an essential element of plaintiff's statutory action. Thus, Shroyer did not waive the right to challenge Lehman's failure to give notice about the deceptive act.

■ Furthermore, to be considered a deceptive act under the Deceptive Consumer Sales Act, an action must fall within the purview of I.C. 24–5–0.5–3. Lehman alleges that Shroyer committed a deceptive act under I.C. 24–5–0.5–3(a)(12) which occurs when the cost of the completed replacement or repair work varies from the estimate by ten percent or more.[3]

Here, when Shroyer's husband gave his friend Lehman a "ballpark" figure at Lehman's place of business while getting his vehicle serviced, Shroyer may have been giving an "estimate" within the plain meaning of the word.[4] However, these circumstances do not represent an "estimate" as contemplated by the Deceptive Consumer Sales Act. As noted in *Captain & Co., supra,* 505 N.E.2d at 94: "This Act was enacted to prevent those who regularly engage in consumer sales from making false or misleading statements about their goods or services." With regard to estimates, the act is designed to prevent a supplier from "lowballing" which is understating a price to secure business when the supplier has no intent to honor the quoted amount. The dealings between Shroyer and Lehman do not reflect such a practice. Shroyer's husband was only making a general guess about the price of the work, and Lehman requested more expensive items later. Therefore, even if Lehman were to have met the notice prerequisites of the statute, it is questionable whether Lehman has alleged a deceptive act as contemplated in the statute.

We hold that the trial court's finding that the Deceptive Consumer Sales Act did not apply to the dealings between Shroyer

---

**3.** I.C. 24–5–0.5–3(a)(12) states: "[T]he replacement or repair constituting the subject of a consumer transaction can be made by the supplier for the estimate the supplier gives a customer for the replacement or repair, if the specified work is completed and:

(A) The cost exceeds the estimate by an amount equal to or greater than ten percent (10%) of the estimate;
(B) The supplier did not obtain written permission from the customer to authorize the supplier to complete the work even if the cost would exceed the amounts specified in clause (A);
(C) The total cost for services and parts for a single transaction is more than seven hundred fifty dollars ($750); and
(D) The supplier knew or reasonably should have known that the cost would exceed the estimate in the amounts specified in clause (A)."

**4.** Webster's New World Dictionary 465 (3d ed. 1988) defines the word "estimate" as "an approximate computation of the probable cost

and Lehman was not clearly erroneous.[5]

The judgment is affirmed.

GARRARD, J., and BAILEY, J., concur.

---

of a piece of work made by a person undertaking to do the work."

5.  Appellant also asserts that two specific findings made by the trial court are not supported by the evidence. Appellant challenges finding 2 which states that Don Shroyer was an independent contractor for Shroyer Pools, and contends that the evidence only supports that he worked for Shroyer Pools. Appellant also argues that finding 18 which held no contract existed between the parties because the parties did not agree as to equipment, labor, and completion date was not supported by the evidence. We choose not to address these issues because we have held that the appellant did not meet the prerequisites to bring an action under the Deceptive Consumer Sales Act.