MERRILLVILLE CONSERVANCY DISTRICT, by the District's BOARD OF DIRECTORS, Appellants–Cross Appellees; Plaintiffs/Counter–Claim Defendants/and Cross–Claim Defendants,

v.

ATLAS EXCAVATING, INC.; Employers Insurance of Wausau; Wausau Insurance Companies; and Wausau Nationwide Insurance Group, Appellees–Cross Appellants; Defendants/Counter–Claim Plaintiffs/Cross–Claim Defendants.

No. 45A05–0010–CV–417.

Court of Appeals of Indiana.

March 8, 2002.

---

William L. Touchette, Merrillville, IN, Attorney for Appellants.

J. Michael Cavosie, Indianapolis, IN, Attorney for Appellees.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Merrillville Conservancy District, by the District's Board of Directors ("MCD") appeals the trial court's determination in its action against Defendants–Appellees Atlas Excavating, Inc. ("Atlas"), Employer's Insurance of Wausau, Wausau Insurance Companies, and Wausau Nationwide Insurance Group.[1] Atlas cross-appeals.

We affirm in part and reverse in part.

### ISSUES

MCD raises three issues for our review, which we restate as:

I.   Whether the trial court erred in awarding prejudgment interest to Atlas.

II.  Whether the trial court erred in determining that a contract clause provided for actual damages.

III. Whether the trial court erred in not adopting the findings made in an earlier determination.

Atlas raises two issues on cross-appeal, which we restate as:

---

1. The last three entities served as sureties for Atlas.

IV. Whether the trial court erred in determining that Atlas breached the contract by performing defective work.

V. Whether the trial court erred in determining that Atlas was not entitled to additional compensation.

*FACTS AND PROCEDURAL HISTORY*

Atlas entered into a construction contract with MCD for improvements to MCD's sewage and wastewater disposal works (the "Project").[2] MCD subsequently determined that Atlas had breached the contract, and it filed a complaint for declaratory judgment in which it sought the following declarations: (1) that a damages clause in the contract was a liquidated damages clause and not an actual damages clause; (2) that MCD was entitled to a specified amount in liquidated damages; (3) that MCD was entitled to terminate the contract because Atlas had breached it; and (4) that MCD was entitled to withhold the final contract payment. Atlas filed a counterclaim in which it sought to recover the balance of the contract sum and additional compensation for extra work. MCD then filed a second complaint in which it sought to recover liquidated and actual damages for Atlas's alleged breach of contract.

MCD's complaints were consolidated with a complaint filed against Atlas by a subcontractor. The trial court subsequently entered partial summary judgment in Atlas's favor on the issue of whether the damages provision of the contract was an actual damages and not a liquidated damages provision. A bench trial was held on the remaining issues, and the court eventually entered judgment awarding Atlas the contract balance and prejudgment interest along with additional compensation of $3,883.66 (damages and interest) for replacement of field tiles, loss due to a stop work order, installation and repair of a lateral sewer, and grading of a private drive. The court rejected Atlas's counterclaim for additional compensation for labor associated with pipe bedding changes. The court found that Atlas had installed defective manhole covers, but MCD had not proven any damages. As noted above, both parties raise issues pertaining to the judgment.

*DISCUSSION AND DECISION*

I. PROPRIETY OF PREJUDGMENT INTEREST AWARD

MCD withheld final payment to Atlas in the amount of $106,682.00. The trial court determined that MCD was not entitled to withhold payment, and it ordered MCD to remit the final payment along with $47,645.47 in prejudgment interest. MCD alleges that it was authorized by both statute (Ind.Code § 36–1–12–1 et seq.) and the contract to withhold payment. MCD further alleges that the award of prejudgment interest was improper.

■ The trial court, on its own motion, made findings of fact and conclusions of law on limited issues. It did not make such findings and conclusions on this issue. Accordingly, we review this issue under a general judgment standard. *Keybank National Association v. NBD Bank,* 699 N.E.2d 322, 325 (Ind.Ct.App.1998). A general judgment will be affirmed if it can

**2.** MCD is a Conservancy District established pursuant to the Indiana Conservancy Act (Ind.Code § 14–33–1 et seq.) for the purpose of collection and disposal of sewage and other liquid wastes. MCD is a political subdivision that imposes a special benefits tax. *See* Ind.

Code § 36–1–2–13. MCD's contract with Atlas involved a "public work project" because the project involved the alteration and construction of an improvement to the MCD's sewage and wastewater disposal works. *See* Ind.Code § 36–1–12–2.

be sustained upon any legal theory consistent with the evidence introduced at trial. *Bedford Recycling, Inc. v. U.S. Granules Corp.*, 634 N.E.2d 1361, 1363 (Ind.Ct.App. 1994), *trans. denied.* On appeal, we will neither reweigh the evidence nor rejudge the credibility of witnesses. *Id.*

We first determine whether MCD had statutory authority to withhold the entire final payment. Ind.Code § 36–1–12–1 et seq. is a statutory scheme which provides for the payment of contractors, laborers, material suppliers, and those who perform services for public work projects. *Wallem v. CLS Industries, Inc.*, 725 N.E.2d 880, 887 (Ind.Ct.App.2000). This relief is mandated by statute because mechanic's liens are not available to a claimant who works on public works projects. *Id.* The statute expands the rights of claimants who would be left without the ability to recover for the materials, labors, or services when general contractors and public entities are unable to make payment. *Id.* Generally, the public works board is required to withhold sufficient monies to pay subcontractors, laborers, material suppliers, and those performing services. *Id.*

The apposite provisions are Ind.Code § 36–1–12–12 and Ind.Code § 36–1–12–13. When a public work project is to be performed, "the board shall withhold final payment to the contractor until the contractor has paid the subcontractors, material suppliers, laborers, or those furnishing services." Ind.Code § 36–1–12–12(a). In order to receive payment, "the subcontractor or subcontractors, material suppliers, laborers, or those furnishing services shall file their claims with the board within sixty (60) days after the last labor performed, last material furnished, or last service rendered . . . ." Ind.Code § 36–1–12–12(b). If there is no dispute between the parties claiming to be entitled to the money withheld, "the board shall pay the claim from the money due the contractor and deduct it from the contract price." Ind.Code § 36–1–12–12(c). If there is a dispute, "the board shall retain sufficient money to pay the claims until the dispute is settled and the correct amount is determined." Ind.Code § 36–1–12–12(d). However, the board may make "a final and complete settlement with the contractor after thirty (30) days after the date of the completion and acceptance of the public work if the board is furnished with satisfactory evidence indicating the payment in full of all subcontractors, material suppliers, laborers, or those furnishing services." *Id.* Under Ind.Code § 36–1–12–13, a contract for public work must contain a provision consistent with Ind.Code § 36–1–12–12, and the board "shall withhold money from the contract price in a sufficient amount to pay the subcontractors, laborers, material suppliers, and those furnishing services."

■ Our supreme court has held that a public entity has no statutory right to withhold more than enough to pay those claimants who have availed themselves of statutory procedures for perfecting liens. *MacDonald v. Calumet Supply Co.*, 215 Ind. 536, 19 N.E.2d 567, 572 (1939), *clarified on reh'g*, 215 Ind. 536, 21 N.E.2d 400, 402 (interpreting a similarly-worded predecessor statute of Ind.Code § 26–1–12–12). Accordingly, MCD was authorized to withhold only that portion of the final payment that was properly claimed by a subcontractor, material supplier, laborer, or service provider under Ind.Code § 36–1–12–12(b).

A review of the record discloses that one of Atlas's subcontractors, Bucko Construction Company, completed its work and delivery of materials on June 13, 1995. On August 1, 1995, Bucko filed a claim with MCD in which it stated that Atlas had not paid invoices in the amount of $57,888.32. This claim was timely filed by Bucko under

Ind.Code § 36–1–12–12(b), and MCD properly withheld $57,888.32 of the final payment pending resolution of a dispute between Bucko and Atlas. Accordingly, the trial court's order erroneously awarded prejudgment interest on this amount. However, MCD improperly withheld the remainder of the final payment, and the trial court's award of prejudgment interest was proper.

We now determine whether MCD was entitled by its contract with Atlas to withhold the entire final payment pending payment by Atlas of all monies owed to subcontractors, material suppliers, laborers, or those furnishing services. MCD claims that it was authorized to withhold the final payment by Section 6.05 of its contract with Atlas. This Section provides that "[MCD] may withhold payment, in whole or in part, of a Request for Payment to the extent necessary to protect [itself] from loss on account of any of the following: ... c. Failure of [Atlas] to make payments due to subcontractors, material suppliers or employees." (MCD's Second Appendix at 28).

■ It is clear from the wording of the contract that MCD's ability to withhold final payment is authorized only to the extent necessary to protect MCD from loss on account of Atlas's failure to pay the entities named in the contract. However, there is no provision in the applicable statute which requires MCD to withhold any payment from a contractor prior to the filing of statutory claims, and "[MCD, as a public entity] is not obliged to assume in advance of such filing that any claim will be filed with [it]." *State v. Puckett,* 70 Ind.App. 591, 123 N.E. 650, 651 (1919) (interpreting similarly-worded predecessor statute to Ind.Code § 36–1–12–12). Furthermore, the statute "confers no right of action on anyone unless the [public entity] wrongfully fails to withhold and pays to the contractor money due the [contractor] which [it] should apply to the payment, either in full or pro rata, of claims previously filed in accordance with the statute." *Id.* Other than its obligation to withhold money to pay Bucko's claim, Atlas had no obligation to withhold from the final payment due Atlas. It also had no need to protect itself by withholding money for unpaid parties who had not filed a statutory claim. Accordingly, MCD was not authorized by its contract to withhold for parties who had not filed their statutory claim.

## II. INTERPRETATION OF DAMAGES CLAUSE

MCD contends that the trial court erred in granting partial summary judgment for Atlas on the basis that a provision of the contract was an actual and not a liquidated damages provision. The provision at issue provides:

*LIQUIDATED DAMAGES:* Should the Contractor [Atlas] fail to perform the work within the period of time stipulated in the Contract Agreement, the Contractor shall pay to the Owner [MCD], as liquidated damages and not as a penalty, all inspection and supervision costs and other expenses accruing to the Owner, but not to exceed $500.00 per calendar day of default, unless extensions of the time granted by the Owner specifically provide for the waiving of liquidated damages.

The Owner shall have the right to deduct the liquidated damages from any monies in its hands, otherwise due, to the Contractor, or to sue for and recover compensation for damages of non-performance of this Contract within the time stipulated.

(MCD's Second Appendix at 33).

■ The purpose of summary judgment is to end litigation when no issue of materi-

al fact exists and when the case may be determined as a matter of law. *Art Country Squire, L.L.C. v. Inland Mortgage Corp.,* 745 N.E.2d 885, 891 (Ind.Ct.App. 2001). Construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Terre Haute First National Bank v. Pacific Employers Insurance, Co.,* 634 N.E.2d 1336, 1337 (Ind.Ct.App.1993).

The goal of contract interpretation is to ascertain and give effect to the parties' intent. *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 717 (Ind.Ct.App. 1999), *trans. denied.* In most cases, the intent of the parties to a contract is to be determined by the "four corners" of the contract. *Keithley's Auction Service v. Children of Jesse Wright,* 579 N.E.2d 657, 659 (Ind.Ct.App.1991). If an ambiguity arises because of the language used in a contract and not because of extrinsic facts, construction of the contract is purely a question of law to be resolved by the court. *First Federal Savings Bank v. Key Markets,* 559 N.E.2d 600, 603 (Ind.1990). An ambiguous contract will be construed against the party that drafted it. *Keithley's,* 579 N.E.2d at 659.

The term "liquidated damages" applies when a specific sum of money has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by either party for a breach of the agreement by the other. *See George B. Swift Co. v. Dolle,* 39 Ind.App. 653, 80 N.E. 678, 681 (1907) (holding that parties may specify "a sum certain" as liquidated damages). Liquidated damages are recoverable when the nature of the agreement is such that when a breach occurs, the damages resulting form the breach would

be difficult to ascertain. *Art Country Squire, L.L.C.,* 745 N.E.2d at 891 (citing *Czeck v. Van Helsland,* 143 Ind.App. 460, 241 N.E.2d 272, 275 (1968)). However, damages recoverable in a breach of contract case generally are limited to actual damages suffered. *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer,* 500 N.E.2d 1257, 1263 (Ind.Ct.App.1986). Actual damages include those reasonable expenses that are a natural consequence of the breach. *Id.*

The contract provision at issue refers to the recovery of "all inspection and supervision costs and other expenses" which are the natural consequence of a breach. The provision then places a ceiling of $500.00 per calendar day upon recovery of these damages. In order to interpret the $500.00 per calendar day limitation as a liquidated damages provision, we would have to ignore the plain language of the provision. The trial court did not err in concluding as a matter of law that the contract provision, though purporting to require payment of liquidated damages, was in actuality an actual damages provision.[3]

MCD contends that its use of the "$500.00 per calendar day" limitation was an attempt to avoid having its provision struck down as a "Have Cake and Eat It Clause." Appellant's Reply Brief at 15 (citing John D. Calamari & Joseph M. Perillo, *Contracts* 567 (West Publishing Co. 1978)). The aforementioned clause "involves an attempt to fix damages in the event of a breach with an option on the part of the aggrieved party to sue for such additional actual damages as he may establish." Calamari and Perillo, *id.* These

---

**3.** Interpretation of a contract provision cannot be controlled by erroneous labels, i.e. the erroneous use of the term "liquidated damages." In interpreting contract provisions, a court must look through form to substance. *McCool v. Ayres,* 136 Ind.App. 72, 192 N.E.2d 636, 645 (1963).

clauses are "struck down as they do not involve a reasonable attempt definitively to pre-estimate the loss." *Id.* The provision at issue, however, does not attempt to fix a term as liquidated damages and reserve the right to recover actual damages. Instead, it states the actual damages that may be recovered and places a ceiling on that amount.

## III. VALIDITY OF THE JUDGMENT

After the complaint was filed in this case, Atlas requested arbitration on a number of issues. Judge William E. Davis, the original judge on the case, entered findings of fact and conclusions of law in support of his order limiting the scope of arbitration. In so doing, Judge Davis concluded that Atlas's request for additional compensation for extra work was barred under certain provisions of the contract between MCD and Atlas. Upon Atlas's request, Judge Davis certified the issue pertaining to the scope of arbitration for interlocutory appeal. This court then granted Atlas the right to pursue the issue on interlocutory appeal. Atlas failed to timely file its praecipe, however, and we dismissed the interlocutory appeal. Subsequently, a change of judge was granted and Special Judge Jeffery Dywan was appointed, heard the evidence, and entered final judgment. As noted above, in its final judgment, the court awarded additional compensation to Atlas to reimburse Atlas for replacement of field tiles, loss due to a stop work order, installation and repair of a lateral sewer, and grading of a private drive. The court rejected Atlas's counterclaim for additional compensation for labor associated with pipe bedding changes.

MCD contends that the trial court, in the person of Special Judge Dywan, was bound by Judge Davis's findings under the law of case doctrine and/or lacked subject matter jurisdiction to award additional compensation. In support of its contention, MCD cites *Greer v. State*, 685 N.E.2d 700 (Ind.1997), and similar cases, for the proposition that "the failure to file a timely praecipe ... for appeal creates a lack of subject matter jurisdiction defect, which deprives the appellate court or trial court of the power and authority to grant the relief requested by the appellant." MCD's Reply Brief at 20–21. MCD states that "*Greer* held that a trial court lacked subject matter jurisdiction to grant [Atlas's] petition for permission to file a belated praecipe to revive [Atlas's] direct appeal; and, that [Atlas] had forfeited [its] right to appeal the trial court's decision which would have been appealable if a timely praecipe had been filed." *Id.* MCD requests that we hold that Judge Davis's findings and conclusions are the law of the case and binding upon Judge Dywan.

■■■ Generally, until a judgment is entered, a trial court can amend, modify, or change an earlier decision. *Serletic v. Noel*, 700 N.E.2d 1159, 1161 (Ind.Ct.App. 1998). Under the law of the case doctrine, a trial court is not bound by its own earlier rulings unless they have been adopted by an appellate court's decision. *Id.; Howard D. Johnson v. Parkside Development Corp.*, 169 Ind.App. 379, 348 N.E.2d 656, 659–60 (1976) (holding that a judgment on appeal constitutes the law of the case as to particular issues decided).

■ Here, the particular issue that Atlas attempted to bring before this court on interlocutory appeal was the propriety of Judge Davis's grant of only limited arbitration. As noted above, a conclusion pertaining to the viability of Atlas's claim for additional compensation was included in Judge Davis's interlocutory order. This court did not adopt either Judge Davis's ultimate determination that only limited arbitration was warranted or his conclu-

sion that the right to arbitration on the compensation issue had been waived by Atlas's failure to comply with contract provisions governing claims for additional compensation. We merely concluded that Atlas had forfeited its right to bring a discretionary interlocutory appeal. Under these circumstances, we hold that the trial court was not prevented from changing its earlier conclusion by either subject matter jurisdiction considerations or by the law of the case doctrine.

## IV. PROPRIETY OF COURT'S FINDING OF BREACH BY ATLAS

■ On cross-appeal, Atlas contends that the trial court erred in finding that MCD "has proven that the manholes [installed by Atlas] are defective by reason of seepage of ground water into manholes. However, [MCD] has not presented any evidence concerning the cost to replace the manholes." (R. 1398). Atlas argues that the trial court should not have made this finding because MCD's claim for damages had been dismissed pursuant to Ind. Trial Rule 41. Atlas notes that because of the dismissal at the close of MCD's case, Atlas did not present any evidence to rebut MCD's allegation regarding the manholes. Atlas also notes that although the trial court's finding does not place Atlas in the position of paying damages to MCD, it does reflect poorly upon Atlas's performance. As Atlas further notes, Indiana's public works statutes provide that a contract for public works is awarded to "the lowest responsible and responsive bidder." Ind.Code § 36–1–12–4.7. In determining whether a bidder is responsible, "the awarding body may properly consider a variety of factors, such as ... quality of previous work, and suitability to the task." *Bowen Engineering Corp. v. W.P.M., Inc.,* 557 N.E.2d 1358, 1366 (Ind.Ct.App.1990).

Our review of the transcript discloses that at the end of MCD's presentation of evidence, Atlas made a motion for involuntary dismissal pursuant to Ind. Trial Rule 41(B). The trial court determined that MCD's claim for damages attributable to a delay in the conclusion of the Project should be dismissed. The court then turned its attention to whether MCD's claim for damages to replace or repair defective manholes should meet the same fate. The court noted that MCD had presented evidence pertaining to the whether the manholes were defectively constructed by Atlas; however, it further noted that MCD failed to present any useful evidence on the question of damages. The court then dismissed MCD's claim "for that reason." (R. 3009).

■ Under T.R. 41(B), a party in a bench trial, without waiving its right to present evidence in the event the motion is denied, may move for dismissal after the plaintiff has completed its presentation of evidence on a particular claim. The basis of this motion is that upon the weight of the evidence and the law there has been no showing of a right to relief. Unless otherwise noted by the trial court, the grant of a dismissal is a ruling on the merits of the plaintiff's claim. Here, the grant of dismissal operated as an adjudication that MCD had failed to prove its damage claim for defective manhole covers, and it had the corresponding effect that Atlas was relieved of the need to rebut evidence presented by MCD on the claim. In effect, the trial court's finding that Atlas performed defective work penalizes Atlas for not presenting evidence to rebut a claim that had already been dismissed. Although we affirm the trial court's dismissal of the claim, we remand to allow the trial court to excise the portion of the finding referring to MCD's presentation of evi-

dence in support of its claim that the manhole covers were defective.

## V. PROPRIETY OF ADDITIONAL COMPENSATION

■■■ Atlas contends that the trial court erred in denying its claim for additional compensation to cover increased labor costs arising out of the use a sand-like material as bedding for polyethylene ductile iron pipes instead of the crushed stone bedding that Atlas had intended to use. At issue is the following finding by the trial court:

> The Court further finds that the [Atlas] claims for additional compensation for pipe bedding changes should be denied. Detailed plans and specifications of the project required Atlas to consider the use of sand for pipe bedding for the polyethylene encased [ductile] iron pipe. The use of sand for pipe bedding was not a change from the original contract which entitled [Atlas] to additional compensation.

(R. 1399).

Atlas argues that the trial court erred in not reading the contract as expressly requiring the use of crushed stone. The pertinent contract language reads as follows:

### 14. *Pipe Laying*

All sewer pipe, except PVC pipe, laid in open trenches shall be installed with Class "B" bedding unless otherwise indicated in the Plans. Pipe bedding details are shown on the Standard Details sheets of the Plans. Density requirements shown on the Details shall be determined in accordance with AASHTO T99. Class "B" pipe bedding material shall consist of well graded crushed stone or crushed gravel conforming to the requirement of ASTM C33, Gradation 67 (3/4–in. to No. 4). A well graded

gravel meeting these same requirements may also be used....

For any pipe having a corrosion protection outer coating or encasement, the bedding material must be free of material or material characteristics which could damage the protective coating or encasement.

(R. 1752).

The contract, which is broadly worded so that it can be used in a variety of circumstances, is not a picture of clarity. However, it is apparent that the term "[a]ll pipe" used in paragraph one is modified by the reference to "any pipe having a corrosion protection outer coating or encasement" in paragraph two. It is undisputed that polyethylene-encased pipe is the type of pipe referred to in paragraph two, and it is clear that crushed stone may be a bedding for this type only if it is "free of material or material characteristics which would damage the protective coating or encasement."

The language of the contract requires reference to extrinsic evidence to determine whether the requirements of paragraph two were met. This evidence comes in the form of the Project Engineer's testimony that the crushed stone that Atlas sought to use had angular features which could tear the polyethylene covering during installation and compaction of the stone. He also testified that Atlas was given the option of using a rounded stone, but it chose to do a more labor-intensive procedure by using the sand-like material. Given the language of the contract and the testimony of the Project Engineer, we conclude that the trial court correctly determined that Atlas was not entitled to additional compensation for the extra labor necessary to compact the sand-like bedding material.

*CONCLUSION*

The trial court was correct in ordering prejudgment interest on the portion of the payment wrongly retained ·by MCD. The trial court erred, however, in ordering prejudgment interest on the portion of the payment retained because of the dispute between Atlas and Bucko.

As to MCD's other claims, the trial court was correct in its interpretation of the contract clause pertaining to damages. Furthermore, the trial court was not bound by Judge Davis's prior determination

As to Atlas's claims, we hold that the trial court improperly made a finding on an issue which had been dismissed. The trial court correctly determined that Atlas was not entitled to additional compensation for increased labor costs.

Affirmed in part and reversed in part. Remanded with instructions that the trial court make changes consistent with this opinion.

KIRSCH, J., and MATHIAS, J., concur.